FILED

2010 OCT -6 PM 3:49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9       FOR THE CENTRAL DISTRICT OF CALIFORNIA

10            June 2010 Grand Jury

**CR 10 01119**

11  | UNITED STATES OF AMERICA,        )  No. CR 10-

12  |              Plaintiff,           )  I N D I C T M E N T

13  |         v.                        )  [21 U.S.C. § 846: Conspiracy
                                        )  to Distribute Cocaine Base in
14  | TROND THOMAS SR.,                 )  the Form of Crack Cocaine and
        aka "Tricky Trond,"             )  Cocaine; 21 U.S.C. §§ 841(a)(1),
15      aka "Trick,"                    )  (b)(1)(A), (b)(1)(B), (b)(1)(C):
    | ROBERT LEE CAMPBELL JR.,          )  Distribution of Cocaine Base in
16      aka "Bink,"                     )  the Form of Crack Cocaine and
        aka "Yank,"                     )  Cocaine; 21 U.S.C. §§ 841(a)(1),
17  | JESUS LAMBERTO OLEA,              )  (b)(1)(A), (b)(1)(B), (b)(1)(C):
        aka "Wicky D,"                  )  Possession with Intent to
18      aka "Wiz,"                      )  Distribute Cocaine Base in the
        aka "Weed,"                     )  Form of Crack Cocaine and
19      aka "Lizard,"                   )  Cocaine; 18 U.S.C. § 2(a):
    | FERNANDO GAMBOA JR.,              )  Aiding and Abetting]
20      aka "Fernando Herrera,"         )
    | CHRISTOPHER NEWELL,               )
21      aka "Chris,"                    )
        aka "Mad Ball,"                 )
22  | MARCOS GALLARDO,                  )
        aka "Marky,"                    )
23      aka "Greedy,"                   )
        aka "Marcus Saldana,"           )
24  | JOSE ALEJANDRO JAUREGUI,          )
        aka "Hondo,"                    )
25  | HADALBERTO JAUREGUI,              )
        aka "Beto,"                     )
26  | RICARDO CUEVAS CEJA,              )
        aka "Rick,"                     )
27      aka "Big Rick,"                 )
        aka "Slick Rick,"               )
28                                      )

SMG:SJN:VOCS

```
 1  JESUS CUEVAS CEJA,                     )
       aka "Jesus Ceja Cuevas,"           )
 2  JULIAN LEYBA,                         )
       aka "Julio Leyva,"                 )
 3     aka "The Beast,"                   )
    RICKY GARCIA,                         )
 4     aka "Gonzo,"                       )
    ANTONIO DONTA HORSLEY,                )
 5     aka "Tonio,"                       )
    TERRANCE RAMON HORSLEY,               )
 6     aka "Moochie,"                     )
       aka "Mooch,"                       )
 7  CLYDE BEASLEY,                        )
       aka "Dude,"                        )
 8  WYATT DEAN YOUNG,                     )
    ANTWOINE DWAYNE REDD,                 )
 9     aka "Spark,"                       )
    LEONARD SANDERS,                      )
10     aka "Shark,"                       )
    WILBUR GENE GAINES JR.,               )
11     aka "Will,"                        )
    DEREK REECE,                          )
12  ROY BORERO,                           )
       aka "Roy Sprewell,"                )
13     aka "Pokey,"                       )
       aka "Joke,"                        )
14  ALFRED MCCULLIN, JR.,                 )
    WILLIE TYRONE TYLER,                  )
15     aka "Willie T,"                    )
       aka "T-Willie,"                    )
16  LARHONDA TENISHA DEVINE,              )
       aka "Tenisha,"                     )
17     aka "Rachel,"                      )
    CHARLES GALLOWAY, JR.,                )
18     aka "Gall,"                        )
    JOHNNIE RUSSEL PURVIS, JR.,           )
19     aka "Joe-Joe,"                     )
    JERMAINE DEVON PURVIS,                )
20     aka "Mainer,"                      )
       aka "Bo-Bo,"                       )
21     aka "Jerry,"                       )
    LANCE CARTEE MIXON,                   )
22     aka "Boo,"                         )
    SHENA NYVETTE MESTAZ,                 )
23     aka "Shena Nyvette Gordon," )
    ROBERT WOODS,                         )
24  JAMES ANDREW STARKEY III,             )
       aka "Earl,"                        )
25     aka "E,"                           )
    WILLIE BENJAMIN SEARCY,               )
26  BAMBI THOMAS,                         )
    MICHAEL JEROME DOTSON JR.,            )
27  TANZY HARRIS,                         )
    GREGORY JOHN JACKSON,                 )
28
```

KIMBERLEY ANN GOBERT,          )
KERRY MICHEL WILLIAMS,         )
    aka "Little Kerry,"        )
LUCILLE CAMPOS, and            )
DANICA DENE MCCRAW,            )
    aka "Danica Purvis,"       )
                               )
                Defendants.    )
                               )
_____ )

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

     Beginning on an unknown date, and continuing to on or about
July 1, 2009, in Los Angeles and Riverside Counties, within the
Central District of California, and elsewhere, defendants TROND
THOMAS SR., also known as ("aka") "Tricky Trond," aka "Trick"
("THOMAS"), ROBERT LEE CAMPBELL JR., aka "Bink," aka "Yank"
("CAMPBELL"), JESUS LAMBERTO OLEA, aka "Wicky D," aka "Wiz," aka
"Weed," aka "Lizard" ("OLEA"), FERNANDO GAMBOA JR., aka "Fernando
Herrera" ("GAMBOA"), CHRISTOPHER NEWELL, aka "Chris," aka "Mad
Ball" ("NEWELL"), MARCOS GALLARDO, aka "Marky," aka "Greedy," aka
"Marcus Saldana" ("GALLARDO"), JOSE ALEJANDRO JAUREGUI, aka
"Hondo" ("J. JAUREGUI"), HADALBERTO JAUREGUI, aka "Beto" ("H.
JAUREGUI"), RICARDO CUEVAS CEJA, aka "Rick," aka "Big Rick, aka
"Slick Rick" ("R. CEJA"), JESUS CUEVAS CEJA, aka "Jesus Ceja
Cuevas" ("J. CEJA"), JULIAN LEYBA, aka "Julio Leyva," aka "The
Beast" ("LEYBA"), RICKY GARCIA, aka "Gonzo" ("GARCIA"), ANTONIO
DONTA HORSLEY, aka "Tonio" ("A. HORSLEY"), TERRANCE RAMON
HORSLEY, aka "Moochie," aka "Mooch" ("T. HORSLEY"), CLYDE
BEASLEY, aka "Dude" ("BEASLEY"), WYATT DEAN YOUNG ("YOUNG"),

3

1  ANTWOINE DWAYNE REDD, aka "Spark" ("REDD"), LEONARD SANDERS, aka
2  "Shark" ("SANDERS"), WILBUR GENE GAINES JR., aka "Will"
3  ("GAINES"), DEREK REECE ("REECE"), ROY BORERO, aka "Roy
4  Sprewell," aka "Pokey," aka "Joke" ("BORERO"), ALFRED MCCULLIN,
5  JR. ("MCCULLIN"), WILLIE TYRONE TYLER, aka "Willie T," aka "T-
6  Willie" ("TYLER"), LARHONDA TENISHA DEVINE, aka "Tenisha," aka
7  "Rachel" ("DEVINE"), CHARLES GALLOWAY, JR., aka "Gall"
8  ("GALLOWAY"), JOHNNIE RUSSEL PURVIS, JR., aka "Joe-Joe" ("JOHNNIE
9  PURVIS"), JERMAINE DEVON PURVIS, aka "Mainer," aka "Bo-Bo," aka
10 "Jerry" ("JERMAINE PURVIS"), LANCE CARTEE MIXON, aka "Boo"
11 ("MIXON"), SHENA NYVETTE MESTAZ, aka "Shena Nyvette Gordon"
12 ("MESTAZ"), ROBERT WOODS ("WOODS"), JAMES ANDREW STARKEY III, aka
13 "Earl," aka "E" ("STARKEY"), WILLIE BENJAMIN SEARCY ("SEARCY"),
14 BAMBI THOMAS ("BAMBI THOMAS"), MICHAEL JEROME DOTSON JR.
15 ("DOTSON"), TANZY HARRIS ("HARRIS"), GREGORY JOHN JACKSON
16 ("JACKSON"), KIMBERLEY ANN GOBERT ("GOBERT"), KERRY MICHEL
17 WILLIAMS, aka "Little Kerry" ("WILLIAMS"), LUCILLE CAMPOS
18 ("CAMPOS"), and DANICA DENE MCCRAW, aka "Danica Purvis"
19 ("MCCRAW"), and others known and unknown to the Grand Jury,
20 conspired and agreed with each other to knowingly and
21 intentionally commit the following offenses defined in Title 21,
22 United States Code, Section 841(a)(1), namely:
23      1.   Distribution of at least 50 grams of a mixture or
24 substance containing a detectable amount of cocaine base in the
25 form of crack cocaine ("crack cocaine"), a schedule II narcotic
26 drug controlled substance, in violation of Title 21, United
27 States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii);
28      2.   Distribution of at least five grams of a mixture or

4

1  substance containing a detectable amount of cocaine base in the

2  form of crack cocaine, a schedule II narcotic drug controlled

3  substance, in violation of Title 21, United States Code, Sections

4  841(a)(1) and 841(b)(1)(B)(iii);

5      3.   Distribution of at least five kilograms of a mixture or

6  substance containing a detectable amount of cocaine ("powder

7  cocaine"), a schedule II narcotic drug controlled substance, in

8  violation of Title 21, United States Code, Sections 841(a)(1) and

9  841(b)(1)(A)(ii);

10      4.   Distribution of at least 500 grams of a mixture or

11  substance containing a detectable amount of cocaine, a schedule

12  II narcotic drug controlled substance, in violation of Title 21,

13  United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii);

14      5.   Distribution of a mixture or substance containing a

15  detectable amount of cocaine base in the form of crack cocaine, a

16  schedule II narcotic drug controlled substance, in violation of

17  Title 21, United States Code, Sections 841(a)(1) and

18  841(b)(1)(C); and

19      6.   Distribution of a mixture or substance containing a

20  detectable amount of cocaine, a schedule II narcotic drug

21  controlled substance, in violation of Title 21, United States

22  Code, Sections 841(a)(1) and 841(b)(1)(C).

23  B.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

24      ACCOMPLISHED

25      The objects of the conspiracy were to be accomplished in

26  substance as follows:

27      1.   Defendants GAMBOA, NEWELL, GALLARDO, H. JAUREGUI, J.

28  JAUREGUI, and R. CEJA would obtain cocaine from an unknown

5

1  supplier.

2       2.    Defendant GAMBOA would distribute cocaine to defendants

3  OLEA, THOMAS, and other unknown customers for further

4  distribution.

5       3.    Defendant NEWELL would distribute cocaine to defendant

6  OLEA and other unknown customers for further distribution.

7       4.    Defendant OLEA would distribute cocaine to defendants

8  THOMAS, CAMPBELL, GARCIA, and LEYBA, and other unknown customers

9  for further distribution.

10      5.    Defendants GALLARDO, H. JAUREGUI, J. JAUREGUI, and R.

11  CEJA would distribute cocaine to defendant THOMAS for further

12  distribution.

13      6.    Defendant J. CEJA would assist defendant R. CEJA in

14  distributing cocaine by arranging by telephone to collect

15  narcotics debts owed to R. CEJA by customers, by collecting the

16  narcotics debts from those customers, and by delivering cocaine

17  to customers on behalf of defendant R. CEJA.

18      7.    Defendants GARCIA and LEYBA would obtain cocaine from

19  defendant OLEA, would arrange for the distribution of that

20  cocaine to unknown customers, and would distribute cocaine to

21  unknown customers for further distribution or use.

22      8.    Defendants THOMAS and CAMPBELL would assist each other

23  in obtaining and distributing cocaine by arranging for joint

24  purchases of cocaine from suppliers and by supplying each other

25  with cocaine.

26      9.    Defendant THOMAS would obtain powder cocaine from

27  defendants GALLARDO, H. JAUREGUI, J. JAUREGUI, R. CEJA, GAMBOA,

28  OLEA, and CAMPBELL, would "cook" powder cocaine into crack

cocaine, and would distribute crack cocaine to defendants A. HORSLEY, YOUNG, REDD, SANDERS, TYLER, REECE, MCCULLIN, GALLOWAY, BORERO, DEVINE, HARRIS, and GAINES, and other unknown customers for further distribution.

10.  Defendant CAMPBELL would obtain powder cocaine from defendants OLEA and THOMAS, would "cook" powder cocaine into crack cocaine, and would distribute both crack cocaine and powder cocaine to defendants GAINES, JOHNNIE PURVIS, JERMAINE PURVIS, and MIXON, and other unknown customers for further distribution.

11.  Defendant T. HORSLEY would assist defendant CAMPBELL in distributing crack cocaine and powder cocaine by asking defendant CAMPBELL about the availability of powder cocaine on behalf of potential customers and by accepting payment for crack cocaine from customers on behalf of defendant CAMPBELL.

12.  Defendant BEASLEY would obtain cocaine from an unknown supplier and would distribute cocaine to defendant A. HORSLEY for conversion into crack cocaine and for further distribution.

13.  Defendant A. HORSLEY would obtain crack cocaine from defendant THOMAS, would obtain powder cocaine from defendant BEASLEY, and would distribute crack cocaine to defendants SEARCY, HARRIS, JACKSON, GOBERT, MCCRAW, and WILLIAMS, and other unknown customers.  Defendant A. HORSLEY would also assist defendant WILLIAMS in distributing crack cocaine by referring customers who wanted to purchase small quantities of crack cocaine to defendant WILLIAMS.

14.  Defendant MESTAZ would assist defendant A. HORSLEY in distributing crack cocaine by "cooking" powder cocaine into crack cocaine.

15.    Defendant YOUNG would obtain cocaine from defendant THOMAS and would distribute cocaine to defendant DOTSON.

16.    Defendant DOTSON would obtain cocaine from defendant YOUNG, would arrange for the distribution of cocaine to unknown customers, and would distribute that cocaine to unknown customers.

17.    Defendants REDD, SANDERS, TYLER, REECE, MCCULLIN, GALLOWAY, BORERO, and DEVINE would obtain crack cocaine from defendant THOMAS, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers.

18.    Defendant GALLOWAY would broker crack cocaine transactions between defendant THOMAS and unknown customers.

19.    Defendants JOHNNIE PURVIS and JERMAINE PURVIS would obtain crack cocaine and powder cocaine from defendant CAMPBELL, would arrange for the distribution of crack cocaine to unknown customers, and would distribute crack cocaine to defendants STARKEY and BAMBI THOMAS, and other unknown customers.

20.    Defendant GAINES would obtain crack cocaine from defendants CAMPBELL and THOMAS, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers, including end users.

21.    Defendant MIXON would obtain crack cocaine from defendant CAMPBELL, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers.

22.    Defendants SEARCY, HARRIS, JACKSON, GOBERT, MCCRAW, and

WILLIAMS would obtain crack cocaine from defendant A. HORSLEY, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers.

23.  Defendant HARRIS would also obtain crack cocaine from defendant THOMAS for further distribution.

24.  Defendant GOBERT would also assist defendant A. HORSLEY in obtaining and distributing cocaine by communicating with suppliers and by brokering cocaine transactions between those suppliers and A. HORSLEY.

25.  Defendant GOBERT would also assist defendant JERMAINE PURVIS in distributing crack cocaine by holding the crack cocaine prior to sale and by handing the crack cocaine to defendant JERMAINE PURVIS for delivery to customers.

26.  Defendant STARKEY would obtain crack cocaine from defendants JOHNNIE PURVIS and JERMAINE PURVIS, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers.  Defendant STARKEY would also broker crack cocaine transactions for defendants JOHNNIE PURVIS and JERMAINE PURVIS.

27.  Defendant BAMBI THOMAS would obtain crack cocaine from defendant JOHNNIE PURVIS, would arrange for the distribution of crack cocaine to unknown customers, and would distribute that crack cocaine to unknown customers.

28.  Defendant WOODS would assist defendant JOHNNIE PURVIS in distributing crack cocaine by picking up crack cocaine from defendant JOHNNIE PURVIS and delivering it to defendant BAMBI THOMAS and other unknown customers.

29.   Defendant GAINES would also assist defendant THOMAS in obtaining and distributing cocaine by acting as a "lookout" and discussing with defendant THOMAS the presence of law enforcement and surveillance in areas where defendant THOMAS conducted cocaine transactions.

30.   Defendant CAMPOS would broker crack cocaine transactions between defendant A. HORSLEY and unknown customers, and would transport A. HORSLEY to the site of crack cocaine sales to those customers.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants THOMAS, CAMPBELL, OLEA, GAMBOA, NEWELL, GALLARDO, J. JAUREGUI, H. JAUREGUI, R. CEJA, J. CEJA, LEYBA, GARCIA, A. HORSLEY, T. HORSLEY, BEASLEY, YOUNG, REDD, SANDERS, GAINES, REECE, BORERO, MCCULLIN, TYLER, DEVINE, GALLOWAY, JOHNNIE PURVIS, JERMAINE PURVIS, MIXON, MESTAZ, WOODS, STARKEY, SEARCY, BAMBI THOMAS, DOTSON, HARRIS, JACKSON, GOBERT, WILLIAMS, CAMPOS, and MCCRAW, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

1.   On February 11, 2008, defendant CAMPBELL arranged to have defendant THOMAS distribute approximately 138.6 grams of crack cocaine, on credit, to a co-conspirator who later became a confidential informant ("CI #1").

2.   On February 11, 2008, defendant THOMAS distributed approximately 138.6 grams of crack cocaine on behalf of defendant CAMPBELL, to CI #1.

10

3.    On April 18, 2008, defendant T. HORSLEY told CI #1 that he would ask defendant CAMPBELL if he had four ounces of powder cocaine that he would sell to CI #1.

4.    On April 18, 2008, defendant A. HORSLEY told CI #1 that defendant CAMPBELL was out looking for cocaine to sell and that defendant CAMPBELL would deliver the cocaine to defendant A. HORSLEY's residence.

5.    On April 18, 2008, defendant A. HORSLEY met with CI #1 to wait for defendant CAMPBELL to deliver the cocaine.

6.    On April 18, 2008, defendant A. HORSLEY told defendant CAMPBELL that CI #1 had $500 for defendant CAMPBELL.

7.    On April 19, 2008, defendant GAINES offered to sell CI #1 two ounces of crack cocaine for $600.

8.    On April 22, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell CI #1 two ounces of crack cocaine.

9.    On April 22, 2008, defendant A. HORSLEY distributed approximately 49.1 grams of crack cocaine to CI #1 in exchange for $1,200.

10.    On April 23, 2008, using coded language in a telephone conversation, defendant GAINES agreed to sell CI #1 two ounces of crack cocaine.

11.    On April 24, 2008, defendant GAINES distributed approximately 49.3 grams of crack cocaine to CI #1 in exchange for $1,200.

12.    On or about April 30, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell CI #1 three ounces of crack cocaine.

13.   On April 30, 2008, defendant A. HORSLEY distributed approximately 68.1 grams of crack cocaine to CI #1 in exchange for $1,800.

14.   On May 6, 2008, using coded language in a telephone conversation, defendant GAINES agreed to sell CI #1 three ounces of crack cocaine.

15.   On May 6, 2008, defendant GAINES distributed approximately 73.6 grams of crack cocaine to CI #1 in exchange for $1,800.

16.   On May 6, 2008, defendant GAINES told CI #1 that he would tell defendant CAMPBELL to provide CI #1 with crack cocaine.

17.   On May 9, 2008, defendant T. HORSLEY told CI #1 that he would tell defendant CAMPBELL that CI #1 had the money to pay CI #1's debt to CAMPBELL.

18.   On May 9, 2008, defendant T. HORSLEY accepted a $4,500 payment from CI #1 to satisfy CI #1's debt to defendant CAMPBELL for the crack cocaine distributed by defendant THOMAS on February 11, 2008.

19.   On May 9, 2008, using coded language, defendant T. HORSLEY told CI #1 that defendant CAMPBELL was providing him with cocaine that day.

20.   On June 5, 2008, using coded language in a telephone conversation, defendant A. HORSLEY offered to sell CI #1 two ounces of crack cocaine.

21.   On June 10, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell CI #1 two ounces of crack cocaine in exchange for $1,400.

22.  On June 10, 2008, defendant A. HORSLEY distributed approximately 48.6 grams of crack cocaine to CI #1 in exchange for $1,400.

23.  On September 18, 2008, using coded language in a telephone conversation, defendant A. HORSLEY responded to a customer complaint by explaining the weights of the various quantities of crack cocaine that defendant A. HORSLEY sold to his customers, and defendant A. HORSLEY defined an "ounce" of crack cocaine as weighing 25 grams.

24.  On September 18, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to deliver approximately two grams of crack cocaine to Customer W.W. and told Customer W.W. to meet him at the Walgreens drugstore located at the intersection of Willow Street and Pacific Avenue in Long Beach, California.

25.  On September 18, 2008, defendant A. HORSLEY distributed approximately two grams of crack cocaine to Customer W.W.

26.  On September 18, 2008, using coded language in a telephone conversation, defendant SEARCY ordered approximately two grams of crack cocaine from defendant A. HORSLEY.

27.  On September 18, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to deliver approximately two grams of crack cocaine to defendant SEARCY.

28.  On September 18, 2008, defendant A. HORSLEY distributed approximately two grams of crack cocaine to defendant SEARCY by throwing it on the ground near defendant SEARCY.

29.  On September 18, 2008, defendant SEARCY possessed with intent to distribute approximately two grams of crack cocaine.

30.  On September 19, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to deliver crack cocaine to Customer A.P. and told Customer A.P. to meet him at the Walgreens drugstore.

31.  On September 19, 2008, defendant A. HORSLEY distributed an unknown quantity of crack cocaine to Customer A.P.

32.  On September 19, 2008, using coded language in a telephone conversation, defendant GOBERT ordered approximately two grams of crack cocaine, and a baggie to package it, from defendant A. HORSLEY.

33.  On September 20, 2008, using coded language in a telephone conversation, defendant GOBERT ordered approximately 18.5 grams of crack cocaine, divided into two separate packages, from defendant A. HORSLEY.

34.  On September 21, 2008, using coded language in a telephone conversation, defendants A. HORSLEY and GOBERT discussed how defendant GOBERT could compile a total of approximately 18.5 grams of crack cocaine from smaller component portions of crack cocaine that defendant A. HORSLEY had just provided to her.

35.  On September 22, 2008, using coded language in a telephone conversation, defendant GOBERT asked defendant A. HORSLEY whether defendant A. HORSLEY wanted to purchase four and one-half ounces, or approximately 126 grams, of powder cocaine for $1,600.

36.  On September 22, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to purchase approximately four and one-half ounces, or approximately 126

grams, of powder cocaine for $1,600 and asked defendant GOBERT to make the purchase for him.

37.  On September 19, 2008, using coded language in a telephone conversation, defendant A. HORSLEY ordered four ounces, or approximately 100 grams, of crack cocaine from defendant THOMAS.

38.  On September 19, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to deliver four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY and told defendant A. HORSLEY that he would be on his way to meet him in one hour.

39.  On September 19, 2008, defendant THOMAS distributed four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY in a black plastic bag.

40.  On September 19, 2008, defendant A. HORSLEY possessed with intent to distribute four ounces, or approximately 100 grams, of crack cocaine.

41.  On September 20, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to provide Customer G.O. with approximately two grams of crack cocaine.

42.  On September 21, 2008, using coded language in a telephone conversation, defendant WILLIAMS ordered approximately four grams of crack cocaine from defendant A. HORSLEY.

43.  On September 21, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to provide defendant WILLIAMS with approximately four grams of crack cocaine.

44.  On September 21, 2008, defendant A. HORSLEY distributed

approximately four grams of crack cocaine to defendant WILLIAMS.

45.  On September 21, 2008, defendant WILLIAMS possessed with intent to distribute approximately four grams of crack cocaine.

46.  On September 21, 2008, defendant A. HORSLEY told defendant WILLIAMS that defendant A. HORSLEY had instructed an unknown individual to meet with defendant WILLIAMS to purchase $25.00 worth of crack cocaine from defendant WILLIAMS.

47.  On September 22, 2008, using coded language in a telephone conversation, defendant A. HORSLEY and defendant BEASLEY discussed the prevailing price and availability of cocaine in defendant A. HORSLEY's neighborhood.

48.  On September 22, 2008, using coded language in a telephone conversation, defendant SEARCY ordered one-quarter ounce, or approximately seven grams, of crack cocaine from defendant A. HORSLEY.

49.  On September 22, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell one-quarter ounce, or approximately seven grams, of crack cocaine to defendant SEARCY.

50.  On September 22, 2008, defendant A. HORSLEY distributed approximately seven grams of crack cocaine to defendant SEARCY.

51.  On September 22, 2008, defendant SEARCY possessed with intent to distribute approximately seven grams of crack cocaine.

52.  On September 23, 2008, using coded language in a telephone conversation, defendant BEASLEY offered to sell cocaine to defendant A. HORSLEY, but defendant A. HORSLEY told defendant BEASLEY that he had already obtained approximately 250 grams of

1    cocaine from another source.

2        53.  On September 23, 2008, using coded language in a

3    telephone conversation, defendant A. HORSLEY asked defendant

4    MESTAZ when she could be available to help him cook powder

5    cocaine into crack cocaine.

6        54.  On September 23, 2008, using coded language in a

7    telephone conversation, defendant MESTAZ told defendant A.

8    HORSLEY that she could be available to help him cook powder

9    cocaine into crack cocaine the next day.

10       55.  On September 24, 2008, using coded language in a

11   telephone conversation, defendant A. HORSLEY and defendant MESTAZ

12   discussed the location and tools they would need to cook A.

13   HORSLEY's powder cocaine into crack cocaine that day.

14       56.  On September 24, 2008, defendant MESTAZ and defendant

15   A. HORSLEY cooked defendant A. HORSLEY's powder cocaine into

16   crack cocaine at defendant GAINES' residence.

17       57.  On September 24, 2008, using coded language in a

18   telephone conversation, defendant A. HORSLEY and defendant

19   BEASLEY discussed a shortage in an amount of cocaine received by

20   defendant A. HORSLEY.

21       58.  On September 24, 2008, using coded language in a

22   telephone conversation, defendant BEASLEY told defendant A.

23   HORSLEY that he would provide an unknown person with two ounces,

24   or approximately 56 grams, of cocaine.

25       59.  On September 24, 2008, using coded language in a

26   telephone conversation, defendant BEASLEY agreed to provide an

27   unknown person with two and one-half ounces, or approximately 70

28   grams, of cocaine.

60.  On September 24, 2008, using coded language in a telephone conversation, defendant CAMPOS and defendant A. HORSLEY discussed how long it would be before defendant A. HORSLEY would be ready to deliver cocaine to another person and discussed that defendant A. HORSLEY had just begun "cutting" the cocaine he was preparing for delivery.

61.  On September 26, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to deliver nine ounces, or approximately 225 grams, of crack cocaine to defendant A. HORSLEY and told defendant A. HORSLEY that he would meet him in thirty minutes.

62.  On September 26, 2008, defendant THOMAS distributed approximately nine ounces, or approximately 225 grams, of crack cocaine to defendant A. HORSLEY in a brown paper package.

63.  On September 26, 2008, defendant A. HORSLEY possessed with intent to distribute approximately nine ounces, or approximately 225 grams, of crack cocaine.

64.  On September 26, 2008, using coded language in a telephone conversation, defendant A. HORSLEY told defendant SEARCY that defendant A. HORSLEY would be "cutting up" the crack cocaine shortly and would be ready to provide some of it to defendant SEARCY in approximately thirty minutes.

65.  On September 26, 2008, using coded language in a telephone conversation, defendant SEARCY ordered one-quarter ounce, or approximately seven grams, of crack cocaine from defendant A. HORSLEY.

66.  On September 26, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell one-

quarter ounce, or approximately seven grams, of crack cocaine to defendant SEARCY in exchange for $165.

67.  On September 26, 2008, using coded language in a telephone conversation, defendant SEARCY agreed to come to defendant A. HORSLEY's apartment to purchase one-quarter ounce, or approximately seven grams, of crack cocaine from defendant A. HORSLEY.

68.  On September 26, 2008, defendant A. HORSLEY distributed approximately one-quarter ounce, or approximately seven grams, of crack cocaine to defendant SEARCY.

69.  On September 26, 2008, defendant SEARCY possessed with intent to distribute approximately one-quarter ounce, or approximately seven grams, of crack cocaine.

70.  On September 26, 2008, using coded language in a telephone conversation, defendant WILLIAMS ordered two two-gram packages, or approximately four grams, of crack cocaine from defendant A. HORSLEY.

71.  On September 26, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell two two-gram packages, or approximately four grams, of crack cocaine to defendant WILLIAMS.

72.  On September 26, 2008, defendant A. HORSLEY distributed two two-gram packages, or approximately four grams, of crack cocaine to defendant WILLIAMS.

73.  On September 26, 2008, defendant WILLIAMS possessed with intent to distribute two two-gram packages, or approximately four grams, of crack cocaine.

74.  On September 26, 2008, using coded language in a

19

telephone conversation, defendant MCCRAW ordered approximately four grams of crack cocaine from defendant A. HORSLEY for $100.

75.   On September 26, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to provide approximately four grams of crack cocaine to defendant MCCRAW for $100.

76.   On September 26, 2008, using coded language in a telephone conversation, defendant MCCRAW asked defendant A. HORSLEY to "cut up" the crack cocaine for her, in order to maximize the amount of money defendant MCCRAW could receive when she re-sold the crack cocaine.

77.   On September 29, 2008, using coded language in a telephone conversation, defendant MCCRAW ordered approximately four grams of crack cocaine from defendant A. HORSLEY.

78.   On October 1, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell nine ounces, or approximately 225 grams, of crack cocaine to defendant A. HORSLEY.

79.   On October 1, 2008, defendant THOMAS distributed nine ounces, or approximately 225 grams, of crack cocaine to defendant A. HORSLEY.

80.   On October 1, 2008, defendant A. HORSLEY possessed with intent to distribute nine ounces, or approximately 225 grams, of crack cocaine.

81.   On October 1, 2008, defendant THOMAS distributed approximately 12.92 grams of crack cocaine to defendant GAINES.

82.   On October 1, 2008, defendant GAINES possessed with intent to distribute approximately 12.92 grams of crack cocaine.

83.  On October 1, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell approximately six grams of crack cocaine to an unknown co-conspirator identified as "Green Eyes."

84.  On October 1, 2008, defendant CAMPOS drove defendant A. HORSLEY to meet with "Green Eyes" in order to distribute approximately six grams of crack cocaine to "Green Eyes."

85.  On October 1, 2008, defendant A. HORSLEY distributed approximately six grams of crack cocaine to "Green Eyes."

86.  On October 1, 2008, using coded language in a telephone conversation, defendant MCCRAW ordered three four-gram packages, or approximately 12 grams, of crack cocaine from defendant A. HORSLEY.

87.  On October 1, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell three four-gram packages, or approximately 12 grams, of crack cocaine to defendant MCCRAW.

88.  On October 1, 2008, defendant A. HORSLEY distributed approximately three four-gram packages, or approximately 12 grams, of crack cocaine to defendant MCCRAW.

89.  On October 1, 2008, defendant MCCRAW possessed with intent to distribute approximately three four-gram packages, or approximately 12 grams, of crack cocaine.

90.  On October 4, 2008, defendant A. HORSLEY distributed approximately two grams of crack cocaine to defendant HARRIS.

91.  On October 4, 2008, defendant HARRIS possessed with intent to distribute approximately two grams of crack cocaine.

92.  On October 7, 2008, using coded language in a telephone

conversation, defendant CAMPOS told defendant A. HORSLEY that an individual wanted to purchase $100 worth of crack cocaine from defendant A. HORSLEY.

93. On October 7, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to distribute $100 worth of crack cocaine to an individual in a drug deal brokered by defendant CAMPOS.

94. On October 7, 2008, using coded language in a telephone conversation, defendant CAMPOS asked defendant A. HORSLEY if she should tell the individual to come pick up the crack cocaine.

95. On October 8, 2008, using coded language in a telephone conversation, defendant MCCRAW ordered approximately four grams of crack cocaine from defendant A. HORSLEY.

96. On October 8, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell approximately four grams of crack cocaine to defendant MCCRAW.

97. On October 8, 2008, defendant A. HORSLEY distributed approximately four grams of crack cocaine to defendant MCCRAW.

98. On October 8, 2008, defendant MCCRAW possessed with intent to distribute approximately four grams of crack cocaine.

99. On October 16, 2008, using coded language in a telephone conversation, defendant SEARCY ordered approximately two grams of crack cocaine from defendant A. HORSLEY.

100. On October 16, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell approximately two grams of crack cocaine to defendant SEARCY.

101. On October 16, 2008, using coded language in a telephone conversation, defendant SEARCY ordered approximately

1  four grams of crack cocaine from defendant A. HORSLEY.

2      102. On October 16, 2008, using coded language in a

3  telephone conversation, defendant A. HORSLEY agreed to sell

4  approximately four grams of crack cocaine to defendant SEARCY.

5      103. On October 16, 2008, defendant A. HORSLEY distributed

6  approximately four grams of crack cocaine to defendant SEARCY.

7      104. On October 16, 2008, defendant SEARCY possessed with

8  intent to distribute approximately four grams of crack cocaine.

9      105. On October 21, 2008, using coded language in a

10 telephone conversation, defendant THOMAS agreed to provide

11 defendant HARRIS with approximately 29 grams of crack cocaine on

12 credit.

13     106. On October 21, 2008, using coded language in a

14 telephone conversation, defendant CAMPBELL told defendant THOMAS

15 that he was waiting for an unidentified co-conspirator to bring

16 him cocaine.

17     107. On October 21, 2008, using coded language in a

18 telephone conversation, defendant CAMPBELL told defendant THOMAS

19 that he had received cocaine from an unidentified co-conspirator.

20     108. On October 21, 2008, using coded language in a

21 telephone conversation, defendant THOMAS asked defendant CAMPBELL

22 what the price was for defendant THOMAS' portion of the cocaine

23 delivered by the unidentified co-conspirator, and defendant

24 CAMPBELL told defendant THOMAS the price owed by defendant

25 THOMAS.

26     109. On October 21, 2008, using coded language in a

27 telephone conversation, defendant MCCULLIN ordered one ounce, or

28 approximately 25 grams, of crack cocaine from defendant THOMAS

for $650.

110. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell one ounce, or approximately 25 grams, of crack cocaine to defendant MCCULLIN for $650.

111. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JOHNNIE PURVIS that he could pick up cocaine from defendant CAMPBELL as soon as it became dark outside.

112. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JOHNNIE PURVIS that he wanted to split the quantity of cocaine being provided by defendant CAMPBELL with defendant JOHNNIE PURVIS.

113. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JOHNNIE PURVIS that, at approximately 7:30 p.m., defendant THOMAS would call defendant JOHNNIE PURVIS and go pick up the cocaine from defendant CAMPBELL.

114. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant CAMPBELL that he was ready to come pick up the cocaine from defendant CAMPBELL.

115. On October 21, 2008, using coded language in a telephone conversation, defendant CAMPBELL told defendant THOMAS that he could come pick up the cocaine from defendant CAMPBELL.

116. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JOHNNIE PURVIS that he was leaving to pick up the cocaine from defendant

CAMPBELL and that defendant THOMAS should have enough money to purchase it.

117. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JERMAINE PURVIS that he was going to defendant CAMPBELL's residence to pick up cocaine from defendant CAMPBELL right now.

118. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JERMAINE PURVIS that he should contact defendant CAMPBELL about purchasing cocaine before defendant CAMPBELL went out of town on Friday.

119. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS and defendant JERMAINE PURVIS discussed prices of cocaine being charged by defendant CAMPBELL and another source of supply.

120. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JERMAINE PURVIS that defendant CAMPBELL had more cocaine than he could sell himself and that defendant CAMPBELL had asked defendant THOMAS to help him sell it.

121. On October 21, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant JERMAINE PURVIS that he and defendant JOHNNIE PURVIS were going to jointly purchase cocaine from defendant CAMPBELL.

122. On October 21, 2008, using coded language in a telephone conversation, defendant JERMAINE PURVIS told defendant THOMAS that he sold approximately two and one-half ounces, or approximately 62.5 grams, of crack cocaine to an unidentified co-conspirator at a price of $700 per ounce.

123. On October 21, 2008, using coded language in a telephone conversation, defendant CAMPBELL told defendant THOMAS to come to the back of his residence to pick up the cocaine from defendant CAMPBELL.

124. On October 21, 2008, defendant CAMPBELL distributed cocaine to defendant THOMAS.

125. On October 21, 2008, defendant THOMAS possessed with intent to distribute the cocaine provided by defendant CAMPBELL.

126. On October 21, 2008, using coded language in a telephone conversation, defendant GALLOWAY arranged for defendant THOMAS to meet with an unknown co-conspirator to purchase crack cocaine from defendant THOMAS.

127. On October 21, 2008, defendant THOMAS distributed crack cocaine to an unknown co-conspirator introduced to him by defendant GALLOWAY.

128. On October 21, 2008, using coded language in a telephone conversation, defendant GALLOWAY complained to defendant THOMAS that defendant THOMAS did not pay defendant GALLOWAY for his part in brokering the crack cocaine deal that day and that defendant THOMAS gave the unknown co-conspirator a more favorable price for crack cocaine than the price he previously charged defendant GALLOWAY.

129. On October 23, 2008, using coded language in a telephone conversation, defendant HARRIS ordered one-half ounce, or approximately 12.5 grams, of crack cocaine from defendant THOMAS.

130. On October 23, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell

26

approximately four grams of crack cocaine to defendant JACKSON.

131. On October 23, 2008, using coded language in a telephone conversation, defendant A. HORSLEY ordered four ounces, or approximately 100 grams, of crack cocaine from defendant THOMAS.

132. On October 23, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY.

133. On October 23, 2008, using coded language in a telephone conversation, defendant THOMAS and defendant A. HORSLEY agreed to meet at defendant A. HORSLEY's residence for defendant THOMAS to sell four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY.

134. On October 23, 2008, using coded language in a telephone conversation, defendant A. HORSLEY warned defendant THOMAS of police presence in the area where they planned to conduct the crack cocaine sale, and defendant THOMAS told defendant A. HORSLEY that he would conduct the transaction later.

135. On October 23, 2008, using coded language in a telephone conversation, defendant THOMAS asked defendant A. HORSLEY if the police officers were still in the area and agreed to deliver the four ounces of crack cocaine in approximately 30 minutes.

136. On October 23, 2008, using coded language in a telephone conversation, defendant A. HORSLEY told defendant JACKSON that he was waiting for the delivery of crack cocaine and would call defendant JACKSON when he had it.

137. On October 23, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant A. HORSLEY that he would be arriving in three minutes to deliver the four ounces of crack cocaine and instructed defendant A. HORSLEY to walk down the street from his residence to meet defendant THOMAS.

138. On October 23, 2008, defendant THOMAS distributed four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY.

139. On October 23, 2008, defendant A. HORSLEY possessed with intent to distribute four ounces, or approximately 100 grams, of crack cocaine.

140. On October 23, 2008, using coded language in a telephone conversation, defendant A. HORSLEY instructed defendant JACKSON to meet him by the gate at defendant T. HORSLEY's residence for the delivery of the crack cocaine defendant JACKSON was waiting to purchase.

141. On October 23, 2008, defendant A. HORSLEY distributed approximately 5.4 grams of crack cocaine to defendant JACKSON for $150.

142. On October 23, 2008, defendant JACKSON possessed with intent to distribute approximately 5.4 grams of crack cocaine.

143. On October 23, 2008, using coded language in a telephone conversation, defendant JACKSON warned defendant A. HORSLEY to avoid the 99 Cent Store on Willow Street and Oregon Avenue because police officers followed him to that location from their earlier narcotics transaction.

144. On October 26, 2008, using coded language in a

telephone conversation, defendant A. HORSLEY ordered four ounces, or approximately 100 grams, of crack cocaine from defendant THOMAS.

145. On October 26, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to deliver four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY.

146. On October 26, 2008, using coded language in a telephone conversation, defendant THOMAS instructed defendant GAINES to call defendant A. HORSLEY to tell him defendant THOMAS would be there in ten minutes to deliver the four ounces of crack cocaine.

147. On October 26, 2008, defendant THOMAS distributed four ounces, or approximately 100 grams, of crack cocaine to defendant A. HORSLEY.

148. On October 26, 2008, defendant A. HORSLEY possessed with intent to distribute four ounces, or approximately 100 grams, of crack cocaine.

149. On October 26, 2008, using coded language in a telephone conversation, defendant GAINES and defendant THOMAS discussed police vehicles that defendant THOMAS believed were following him after the crack cocaine transaction with defendant A. HORSLEY, and defendant GAINES told defendant THOMAS that he did not see anyone follow him after he conducted the transaction with defendant A. HORSLEY.

150. On October 26, 2008, using coded language in a telephone conversation, defendant GAINES told defendant THOMAS that he was going to go hide the crack cocaine that he had just

obtained as part of the crack cocaine that defendant THOMAS had just delivered to defendant A. HORSLEY.

151. On November 12, 2008, using coded language in a telephone conversation, defendant A. HORSLEY agreed to sell crack cocaine to Customer A.P. for $50 in cash and additional merchandise.

152. On November 12, 2008, defendant A. HORSLEY distributed approximately 0.3 grams of crack cocaine to Customer A.P. in exchange for $50 in cash and additional merchandise.

153. On November 20, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant R. CEJA that he would be ready to meet with defendant R. CEJA the following day and confirmed the amount of money defendant THOMAS owed defendant R. CEJA.

154. On November 22, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant R. CEJA that he would bring the money he owed to defendant R. CEJA later that day.

155. On November 22, 2008, using coded language in a telephone conversation, defendant THOMAS asked defendant R. CEJA if he had cocaine available to sell to defendant THOMAS if defendant THOMAS could come up with enough money to purchase it.

156. On November 22, 2008, using coded language in a telephone conversation, defendant R. CEJA told defendant THOMAS that defendant R. CEJA had cocaine available to sell to defendant THOMAS.

157. On November 23, 2008, using coded language in a telephone conversation, defendant TYLER ordered crack cocaine

1  from defendant THOMAS.

2      158. On November 23, 2008, using coded language in a

3  telephone conversation, defendant THOMAS agreed to sell crack

4  cocaine to defendant TYLER.

5      159. On November 23, 2008, using coded language in a

6  telephone conversation, defendant MCCULLIN ordered more than

7  three ounces, or approximately 75 grams, of crack cocaine from

8  defendant THOMAS.

9      160. On November 23, 2008, using coded language in a

10 telephone conversation, defendant THOMAS agreed to sell more than

11 three ounces, or approximately 75 grams, of crack cocaine to

12 defendant MCCULLIN.

13     161. On November 23, 2008, defendant THOMAS distributed more

14 than three ounces, or approximately 75 grams, of crack cocaine to

15 an unknown co-conspirator accepting it on behalf of defendant

16 MCCULLIN.

17     162. On November 23, 2008, defendant MCCULLIN possessed with

18 intent to distribute more than three ounces, or approximately 75

19 grams, of crack cocaine.

20     163. On November 24, 2008, using coded language in a

21 telephone conversation, defendant THOMAS asked defendant R. CEJA

22 if his supplier had one kilogram of cocaine available to sell to

23 defendant THOMAS.

24     164. On November 25, 2008, using coded language in a

25 telephone conversation, defendant HARRIS complained to defendant

26 THOMAS about defendant THOMAS' failure to reduce the price for

27 crack cocaine defendant THOMAS sold to defendant HARRIS the

28 previous day.

165. On November 26, 2008, using coded language in a telephone conversation, defendant HARRIS ordered an crack cocaine from defendant THOMAS.

166. On November 26, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell crack cocaine to defendant HARRIS.

167. On November 26, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant R. CEJA that he was on his way to pay defendant R. CEJA approximately $15,000 for cocaine previously provided by defendant R. CEJA to defendant THOMAS.

168. On November 26, 2008, defendant THOMAS paid $14,958 to defendant J. CEJA to settle a debt to defendant R. CEJA for cocaine previously provided by defendant R. CEJA to defendant THOMAS.

169. On December 1, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant R. CEJA that he would have money to pay defendant R. CEJA that day and asked defendant R. CEJA if he had one kilogram of cocaine available to sell to defendant THOMAS.

170. On December 1, 2008, using coded language in a telephone conversation, defendant R. CEJA told defendant THOMAS that he had one kilogram of cocaine available to sell to defendant THOMAS.

171. On December 2, 2008, using coded language in a telephone conversation, defendant THOMAS and defendant R. CEJA arranged to meet at 10375 Fern Avenue, in Stanton, California for defendant R. CEJA to provide defendant THOMAS with one kilogram

of cocaine.

172. On December 2, 2008, defendant J. CEJA distributed approximately 972 grams of cocaine to defendant THOMAS.

173. On December 2, 2008, defendant THOMAS possessed with intent to distribute approximately 972 grams of cocaine.

174. On December 2, 2008, using coded language in a telephone conversation, defendant THOMAS complained to defendant R. CEJA that the agreed-upon kilogram of cocaine delivered to defendant THOMAS earlier that day was approximately one ounce, or 28 grams, short.

175. On December 2, 2008, using coded language in a telephone conversation, defendant R. CEJA told defendant THOMAS that he would tell his narcotics supplier that the delivery to defendant THOMAS was approximately one ounce short of the amount of cocaine promised.

176. On December 2, 2008, using coded language in a telephone conversation, defendant THOMAS complained to defendant R. CEJA that defendant THOMAS' customer complained that the cocaine delivered to defendant THOMAS earlier that day was too dark because it was burnt.

177. On December 2, 2008, using coded language in a telephone conversation, defendant R. CEJA told defendant THOMAS that his narcotics supplier instructed him to deduct the price of the missing ounce of cocaine from the amount owed by defendant THOMAS for the cocaine he purchased from R. CEJA.

178. On December 2, 2008, using coded language in a telephone conversation, defendant THOMAS and defendant REDD arranged to meet in order for defendant THOMAS to deliver crack

33

cocaine to defendant REDD.

179. On December 2, 2008, defendant THOMAS distributed crack cocaine to defendant REDD.

180. On December 2, 2008, defendant REDD possessed with intent to distribute crack cocaine.

181. On December 3, 2008, using coded language in a telephone conversation, defendant DEVINE ordered crack cocaine from defendant THOMAS.

182. On December 3, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell crack cocaine to defendant DEVINE in exchange for $2,875.

183. On December 4, 2008, using coded language in a telephone conversation, defendant REDD ordered crack cocaine from defendant THOMAS.

184. On December 4, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to provide defendant REDD with crack cocaine and assured defendant REDD that it was good quality crack cocaine.

185. On December 4, 2008, defendant THOMAS distributed crack cocaine to defendant REDD.

186. On December 4, 2008, defendant REDD possessed with intent to distribute approximately 612.5 grams of crack cocaine.

187. On December 4, 2008, defendant THOMAS distributed approximately 118.6 grams of crack cocaine to defendant DEVINE.

188. On December 4, 2008, defendant DEVINE possessed with intent to distribute approximately 118.6 grams of crack cocaine.

189. On December 4, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to provide

unindicted co-conspirator C.L. with one and one-half ounces of crack cocaine the following day.

190. On December 4, 2008, using coded language in a telephone conversation, defendant THOMAS told unindicted co-conspirator C.L. that defendant DEVINE had purchased five ounces of crack cocaine from defendant THOMAS before defendant DEVINE was arrested that day.

191. On December 5, 2008, using coded language in a telephone conversation, defendant REDD told defendant THOMAS that he had been arrested the previous day after their narcotics transaction and that the employees at the impound yard found, in defendant REDD's vehicle, the crack cocaine provided by defendant THOMAS the previous day.

192. On December 8, 2008, using coded language in a telephone conversation, defendant BORERO complained to defendant THOMAS that a previous quantity of crack cocaine provided by defendant THOMAS was short approximately 3.4 grams.

193. On December 11, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell one ounce, or approximately 25 grams, of crack cocaine to defendant HARRIS on credit, with a partial payment up front.

194. On December 11, 2008, using coded language in a telephone conversation, defendant HARRIS offered to pay defendant THOMAS $400 as an initial payment for the crack cocaine that defendant THOMAS had agreed to provide to her later that day.

195. On December 11, 2008, defendant THOMAS distributed approximately one ounce, or approximately 25 grams, of crack cocaine to defendant HARRIS.

35

196. On December 11, 2008, defendant HARRIS possessed with intent to distribute approximately one ounce, or approximately 25 grams, of crack cocaine.

197. On December 11, 2008, using coded language in a telephone conversation, defendant HARRIS complained to defendant THOMAS about the quality of the crack cocaine that defendant THOMAS provided to her earlier that day, but defendant HARRIS indicated that she had not yet received any complaints from her customers.

198. On December 13, 2008, using coded language in a telephone conversation, defendant OLEA told defendant THOMAS that his supplier had good quality cocaine available for $24,800 per kilogram.

199. On December 14, 2008, using coded language in a telephone conversation, defendant THOMAS complained that defendant OLEA supplied one of defendant THOMAS' co-conspirators with cocaine, when defendant THOMAS was still waiting for defendant OLEA to supply defendant THOMAS with cocaine.

200. On December 16, 2008, using coded language in a telephone conversation, defendant OLEA told defendant THOMAS that he had cocaine available to sell immediately to defendant THOMAS for the same price that defendant OLEA had previously quoted to defendant THOMAS, and defendant OLEA offered to let defendant THOMAS sample it.

201. On December 16, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant OLEA to bring the sample of the cocaine that defendant OLEA had offered to sell to him.

202. On December 16, 2008, defendant OLEA provided defendant THOMAS with a sample of the cocaine that defendant OLEA had available for sale.

203. On December 25, 2008, using coded language in a telephone conversation, defendant TYLER ordered crack cocaine from defendant THOMAS on behalf of an unknown customer.

204. On December 25, 2008, using coded language in a telephone conversation, defendant THOMAS agreed to sell crack cocaine to a customer introduced by defendant TYLER.

205. On December 25, 2008, defendant THOMAS distributed crack cocaine to a customer in a drug deal arranged by defendant TYLER.

206. On December 26, 2008, using coded language in a telephone conversation, defendant GALLOWAY ordered cocaine from defendant THOMAS for a transaction the next day.

207. On December 27, 2008, using coded language in a telephone conversation, defendant GALLOWAY told defendant THOMAS that he was waiting for defendant THOMAS and that defendant GALLOWAY's customers were waiting for defendant GALLOWAY.

208. On December 27, 2008, using coded language in a telephone conversation, defendant THOMAS told defendant GALLOWAY that he would meet defendant GALLOWAY in approximately 20 minutes to conduct a narcotics transaction.

209. On December 27, 2008, defendant THOMAS distributed cocaine to defendant GALLOWAY.

210. On December 27, 2008, defendant GALLOWAY possessed with intent to distribute cocaine.

211. On December 27, 2008, using coded language in a

37

telephone conversation, defendant GALLOWAY told defendant THOMAS
that the amount of cocaine provided by defendant THOMAS was short
approximately two grams and that defendant THOMAS therefore owed
defendant GALLOWAY $50.00.

212. On December 29, 2008, using coded language in a
telephone conversation, defendant LEYBA told defendant OLEA that
he wanted to purchase two ounces of cocaine.

213. On January 2, 2009, using coded language in a telephone
conversation, defendant LEYBA told defendant OLEA that he wanted
to purchase one ounce of cocaine.

214. On January 2, 2009, using coded language in a telephone
conversation, defendant R. CEJA told defendant THOMAS that he had
cocaine available for sale to defendant THOMAS.

215. On January 2, 2009, using coded language in a telephone
conversation, defendant THOMAS agreed to purchase and pick up
cocaine from defendant R. CEJA.

216. On January 2, 2009, defendant R. CEJA distributed
cocaine to defendant THOMAS.

217. On January 5, 2009, using coded language in a telephone
conversation, defendant GARCIA asked defendant OLEA when he would
have a different type of cocaine available and told defendant
OLEA that defendant GARCIA had a customer waiting to purchase
cocaine.

218. On January 5, 2009, using coded language in a telephone
conversation, defendant OLEA agreed to call defendant GARCIA the
following day to discuss the availability of cocaine to sell to
defendant GARCIA.

219. On January 6, 2009, defendant STARKEY distributed

1  approximately 3.7 grams of crack cocaine to CI #2 in exchange for

2  $200.00.

3      220. On January 8, 2009, using coded language in a telephone

4  conversation, defendant THOMAS agreed to sell eighteen ounces, or

5  approximately 450 grams, of crack cocaine to defendant REDD.

6      221. On January 8, 2009, using coded language in a telephone

7  conversation, defendant REDD agreed to purchase and pick up

8  eighteen ounces, or approximately 450 grams, of crack cocaine

9  from defendant THOMAS.

10     222. On January 8, 2009, defendant THOMAS distributed

11  approximately 470.9 grams of crack cocaine to defendant REDD.

12     223. On January 8, 2009, defendant REDD possessed with

13  intent to distribute approximately 470.9 grams of crack cocaine.

14     224. On January 8, 2009, using coded language in a telephone

15  conversation, defendant GARCIA told defendant OLEA that he wanted

16  to purchase one ounce, or approximately 28 grams, of cocaine from

17  defendant OLEA.

18     225. On January 8, 2009, using coded language in a telephone

19  conversation, defendant OLEA agreed to sell one ounce, or

20  approximately 28 grams, of cocaine to defendant GARCIA.

21     226. On January 8, 2009, defendant OLEA distributed

22  approximately one ounce, or approximately 28 grams, of cocaine to

23  defendant GARCIA.

24     227. On January 8, 2009, defendant GARCIA possessed with

25  intent to distribute approximately one ounce, or approximately 28

26  grams, of cocaine.

27     228. On January 9, 2009, using coded language in a telephone

28  conversation, defendant LEYBA told defendant OLEA that he wanted

to purchase cocaine from defendant OLEA.

229. On January 9, 2009, using coded language in a telephone conversation, defendant OLEA agreed to sell both cocaine and crack cocaine to defendant LEYBA for a good price.

230. On January 9, 2009, defendant OLEA distributed both cocaine and crack cocaine to defendant LEYBA.

231. On January 9, 2009, defendant LEYBA possessed with intent to distribute both cocaine and crack cocaine.

232. On January 12, 2009, using coded language in a telephone conversation, defendant SANDERS ordered one ounce, or approximately 25 grams, of crack cocaine from defendant THOMAS.

233. On January 12, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute one ounce, or approximately 25 grams, of crack cocaine to defendant SANDERS.

234. On January 12, 2009, using coded language in a telephone conversation, defendant THOMAS instructed defendant SANDERS to stop discussing narcotics transactions over the telephone, in order to avoid detection of their drug trafficking activities by law enforcement.

235. On January 13, 2009, using coded language in a telephone conversation, defendant LEYBA complained about the quality of crack cocaine defendant LEYBA had received from defendant OLEA.

236. On January 13, 2009, using coded language in a telephone conversation, defendant OLEA told defendant LEYBA that defendant OLEA had more of the same quality of crack cocaine, but defendant OLEA did not have any of a higher quality cocaine

1  product that defendant OLEA had recently sold to another

2  customer.

3      237. On January 13, 2009, using coded language in a

4  telephone conversation, defendant LEYBA told defendant OLEA that

5  he had sold the poor quality crack cocaine that he had received

6  from defendant OLEA, and defendant LEYBA told defendant OLEA to

7  call him when defendant OLEA obtained better quality cocaine.

8      238. On January 14, 2009, using coded language in a

9  telephone conversation, defendant REECE ordered one-half ounce,

10  or approximately 12.5 grams, of crack cocaine from defendant

11  THOMAS.

12      239. On January 14, 2009, using coded language in a

13  telephone conversation, defendant THOMAS agreed to sell one-half

14  ounce, or approximately 12.5 grams, of crack cocaine to defendant

15  REECE.

16      240. On January 14, 2009, defendant THOMAS distributed

17  approximately one-half ounce, or approximately 12.5 grams, of

18  crack cocaine to defendant REECE.

19      241. On January 14, 2009, defendant REECE possessed with

20  intent to distribute approximately one-half ounce, or

21  approximately 12.5 grams, of crack cocaine.

22      242. On January 16, 2009, using coded language in a

23  telephone conversation, defendant HARRIS ordered one-half ounce,

24  or approximately 12.5 grams, of crack cocaine from defendant

25  THOMAS.

26      243. On January 16, 2009, using coded language in a

27  telephone conversation, defendant THOMAS agreed to sell one-half

28  ounce, or approximately 12.5 grams, of crack cocaine to defendant

HARRIS.

244. On January 17, 2009, using coded language in a telephone conversation, defendant BORERO ordered crack cocaine from defendant THOMAS.

245. On January 17, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to sell crack cocaine to defendant BORERO.

246. On January 17, 2009, defendant THOMAS distributed crack cocaine to defendant BORERO.

247. On January 17, 2009, defendant BORERO possessed with intent to distribute crack cocaine.

248. On February 3, 2009, using coded language in a telephone conversation, defendant STARKEY agreed to sell CI #2 one-half ounce of crack cocaine in exchange for $380.

249. On February 3, 2009, defendant STARKEY distributed approximately 11.2 grams of crack cocaine to CI #2 in exchange for $380.

250. On February 4, 2009, using coded language in a telephone conversation, defendant STARKEY agreed to sell CI #2 three ounces, or approximately 84 grams, of crack cocaine in exchange for $2,400.

251. On February 5, 2009, defendant STARKEY met with CI #2 at defendant STARKEY's residence to conduct the crack cocaine transaction they had negotiated.

252. On February 5, 2009, defendant GOBERT handed defendant JERMAINE PURVIS a red bag containing approximately 73.2 grams of crack cocaine for defendant JERMAINE PURVIS to distribute to CI #2.

253. On February 5, 2009, defendant JERMAINE PURVIS distributed approximately 73.2 grams of crack cocaine to CI #2 in exchange for $2,400.

254. On February 10, 2009, using coded language in a telephone conversation, defendant GARCIA asked defendant OLEA for advice on how to salvage one ounce of cocaine that had gotten wet.

255. On February 11, 2009, using coded language in a telephone conversation, defendant THOMAS asked defendant OLEA if he could provide cocaine to defendant CAMPBELL.

256. On February 11, 2009, using coded language in a telephone conversation, defendants THOMAS and CAMPBELL agreed to split the purchase of cocaine from defendant GAMBOA.

257. On February 11, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant CAMPBELL that defendant GAMBOA could give them each approximately nine ounces, or approximately 225 grams, of cocaine the following day.

258. On February 11, 2009, using coded language in a telephone conversation, defendant STARKEY agreed to arrange a sale to CI #2 of three ounces, or approximately 75 grams, of crack cocaine.

259. On February 12, 2009, using coded language in a telephone conversation, defendant STARKEY ordered three ounces, or approximately 75 grams, of crack cocaine from defendant JERMAINE PURVIS for sale to CI #2.

260. On February 12, 2009, using coded language in a telephone conversation, defendant JERMAINE PURVIS agreed to sell three ounces, or approximately 75 grams, of crack cocaine to

defendant STARKEY for sale to CI #2.

261. On February 12, 2009, defendant STARKEY met with CI #2 at defendant STARKEY's residence to conduct the crack cocaine transaction they had negotiated.

262. On February 12, 2009, defendant JERMAINE PURVIS distributed approximately 73.4 grams of crack cocaine to CI #2 in exchange for $2,400.

263. On February 12, 2009, using coded language in a telephone conversation, defendant MIXON ordered three ounces, or approximately 75 grams, of crack cocaine from defendant CAMPBELL.

264. On February 12, 2009, using coded language in a telephone conversation, defendant CAMPBELL agreed to sell three ounces, or approximately 75 grams, of crack cocaine to defendant MIXON.

265. On February 12, 2009, defendant CAMPBELL distributed approximately 74.3 grams of crack cocaine to defendant MIXON.

266. On February 12, 2009, defendant MIXON possessed with intent to distribute approximately 74.3 grams of crack cocaine.

267. On February 12, 2009, using coded language in a telephone conversation, defendant THOMAS provided defendant CAMPBELL with defendant OLEA's telephone number and arranged for defendant CAMPBELL to call defendant OLEA to arrange a cocaine transaction.

268. On February 12, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant OLEA that defendant CAMPBELL wanted to purchase one-half kilogram, or approximately 500 grams, of cocaine from defendant OLEA.

269. On February 12, 2009, using coded language in a

telephone conversation, defendant OLEA told defendant CAMPBELL
that he would check with cocaine suppliers to see if he could
supply one-half kilogram, or approximately 500 grams, of cocaine
to defendant CAMPBELL.

270. On February 12, 2009, using coded language in a
telephone conversation, defendant OLEA ordered one kilogram of
cocaine from defendant GAMBOA.

271. On February 12, 2009, using coded language in a
telephone conversation, defendant GAMBOA agreed to distribute one
kilogram of cocaine to defendant OLEA.

272. On February 12, 2009, defendant GAMBOA distributed
approximately one kilogram of cocaine to defendant OLEA.

273. On February 13, 2009, using coded language in a
telephone conversation, defendant OLEA told defendant CAMPBELL
that he needed to split the kilogram of cocaine in half and
agreed to meet defendant CAMPBELL in approximately one hour to
conduct the cocaine transaction.

274. On February 13, 2009, defendant OLEA distributed
approximately 500 grams of cocaine to defendant CAMPBELL.

275. On February 13, 2009, defendant CAMPBELL possessed with
intent to distribute approximately 500 grams of cocaine.

276. On February 13, 2009, using coded language in a
telephone conversation, defendant HARRIS ordered one-quarter
ounce, or approximately six grams, of crack cocaine from
defendant JERMAINE PURVIS.

277. On February 17, 2009, using coded language in a
telephone conversation, defendant GARCIA asked defendant OLEA for
a particular type of cocaine, and defendant OLEA explained that

1    he did not have any of that type because he had already converted

2    it into crack cocaine.

3         278. On February 17, 2009, using coded language in a

4    telephone conversation, defendant GARCIA asked defendant OLEA to

5    tell him when defendant OLEA obtained more of a particular type

6    of cocaine, because defendant GARCIA was ready to purchase it for

7    re-sale.

8         279. On February 17, 2009, using coded language in a

9    telephone conversation, defendant OLEA asked defendant GARCIA how

10   much cocaine defendant GARCIA wanted to purchase, and defendant

11   GARCIA told defendant OLEA that he wanted the same amount as a

12   previous purchase.

13        280. On February 18, 2009, using coded language in a

14   telephone conversation, defendant STARKEY agreed to sell three

15   ounces, or approximately 75 grams, of crack cocaine to CI #2.

16        281. On February 19, 2009, defendant JOHNNIE PURVIS provided

17   approximately 70.5 grams of crack cocaine for defendant STARKEY

18   to sell to CI #2.

19        282. On February 19, 2009, defendant STARKEY distributed

20   approximately 70.5 grams of crack cocaine to CI #2 in exchange

21   for $2,400.

22        283. On February 23, 2009, defendant JOHNNIE PURVIS

23   distributed crack cocaine to Customer D.R.

24        284. On February 23, 2009, using coded language in a

25   telephone conversation, defendant NEWELL told defendant OLEA that

26   he would be speaking to his cocaine supplier and asked defendant

27   OLEA how much he would be willing to pay for a kilogram of

28   cocaine.

285. On February 23, 2009, using coded language in a telephone conversation, defendant OLEA offered to pay defendant NEWELL approximately $23,000 per kilogram of cocaine.

286. On February 24, 2009, using coded language in a telephone conversation, defendant OLEA complained to defendant NEWELL about the quality of cocaine provided to defendant OLEA by defendant NEWELL.

287. On February 24, 2009, using coded language in a telephone conversation, defendant NEWELL told defendant OLEA that defendant NEWELL had passed along defendant OLEA's complaint to defendant NEWELL's drug suppliers and had obtained a sample directly from a kilogram package of cocaine.

288. On February 24, 2009, defendant NEWELL showed defendant OLEA a sample of cocaine available for purchase from defendant NEWELL's drug suppliers.

289. On February 24, 2009, using coded language in a telephone conversation, defendant OLEA told defendant NEWELL that the cocaine was good quality cocaine and told defendant NEWELL to obtain the kilogram of cocaine on behalf of defendant OLEA.

290. On February 24, 2009, defendant NEWELL distributed approximately one kilogram of cocaine to defendant OLEA.

291. On February 24, 2009, defendant OLEA possessed with intent to distribute approximately one kilogram of cocaine.

292. On February 24, 2009, using coded language in a telephone conversation, defendant JOHNNIE PURVIS ordered cocaine from defendant OLEA.

293. On February 24, 2009, using coded language in a telephone conversation, defendant OLEA agreed to distribute

47

1 | cocaine to defendant JOHNNIE PURVIS the following day.

2 |     294. On February 24, 2009, defendant OLEA distributed one

3 | ounce, or approximately 28 grams, of cocaine to defendant LEYBA.

4 |     295. On February 24, 2009, defendant LEYBA possessed with

5 | intent to distribute one ounce, or approximately 28 grams, of

6 | cocaine.

7 |     296. On February 25, 2009, using coded language in a

8 | telephone conversation, defendant OLEA told defendant NEWELL that

9 | everything was fine with the cocaine provided by defendant NEWELL

10 | the previous day and that defendant OLEA had already re-sold half

11 | of it.

12 |     297. On February 27, 2009, using coded language in a

13 | telephone conversation, defendant OLEA told defendant NEWELL that

14 | he had some of the money owed to defendant NEWELL's cocaine

15 | suppliers and that he was collecting the remaining amount owed.

16 |     298. On February 27, 2009, using coded language in a

17 | telephone conversation, defendant LEYBA told defendant OLEA that

18 | the cocaine he had received from defendant OLEA was poor quality

19 | cocaine and that defendant LEYBA had tried to cook it into crack

20 | cocaine, but he could not sell it to his customers.

21 |     299. On February 28, 2009, using coded language in a

22 | telephone conversation, defendant OLEA told defendant NEWELL that

23 | he had been receiving complaints from customers regarding the

24 | cocaine provided by defendant NEWELL and his suppliers.

25 |     300. On February 25, 2009, using coded language in a

26 | telephone conversation, defendant STARKEY agreed to sell three

27 | ounces, or approximately 75 grams, of crack cocaine to CI #2.

28 |     301. On February 26, 2009, using coded language in a

telephone conversation, defendant JOHNNIE PURVIS agreed to provide three ounces, or approximately 75 grams, of crack cocaine for defendant STARKEY to sell to CI #2.

302. On February 26, 2009, defendant STARKEY distributed approximately 71.4 grams of crack cocaine to CI #2 in exchange for $2,400.

303. On February 26, 2009, using coded language in a telephone conversation, defendant BAMBI THOMAS ordered one-half ounce of crack cocaine from defendant JOHNNIE PURVIS.

304. On February 26, 2009, using coded language in a telephone conversation, defendant JOHNNIE PURVIS agreed to distribute one-half ounce of crack cocaine to defendant BAMBI THOMAS.

305. On February 26, 2009, defendant WOODS distributed approximately one-half ounce of crack cocaine to defendant BAMBI THOMAS.

306. On February 26, 2009, defendant BAMBI THOMAS possessed with intent to distribute approximately one-half ounce of crack cocaine.

307. On March 2, 2009, using coded language in a telephone conversation, defendant H. JAUREGUI told defendant THOMAS that defendant H. JAUREGUI's cocaine supplier would sell defendant THOMAS one kilogram of cocaine for $22,500.

308. On March 3, 2009, using coded language in a telephone conversation, defendant LEYBA complained about the quality of the cocaine purchased from defendant OLEA.

309. On March 3, 2009, using coded language in a telephone conversation, defendant OLEA offered to take back the poor

quality cocaine from defendant LEYBA.

310. On March 3, 2009, using coded language in a telephone conversation, defendant LEYBA told defendant OLEA that he had already sold the poor quality cocaine.

311. On March 3, 2009, using coded language in a telephone conversation, defendant LEYBA ordered crack cocaine from defendant OLEA on behalf of another person.

312. On March 3, 2009, using coded language in a telephone conversation, defendant OLEA agreed to sell crack cocaine to defendant LEYBA.

313. On March 6, 2009, using coded language in a telephone conversation, defendant BORERO ordered two ounces, or approximately 50 grams, of crack cocaine from defendant THOMAS.

314. On March 6, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute two ounces, or approximately 50 grams, of crack cocaine to defendant BORERO.

315. On March 7, 2009, using coded language in a telephone conversation, defendant JOHNNIE PURVIS agreed to provide approximately two grams of crack cocaine to Customer S.M.

316. On March 7, 2009, using coded language in a telephone conversation, defendant JOHNNIE PURVIS instructed defendant WOODS to provide approximately two grams of crack cocaine to Customer S.M.

317. On March 7, 2009, defendant WOODS distributed approximately two grams of crack cocaine to Customer S.M.

318. On March 18, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to provide cocaine to defendant YOUNG.

319. On March 18, 2009, defendant THOMAS distributed approximately 125.8 grams of cocaine to defendant YOUNG.

320. On March 18, 2009, defendant YOUNG distributed approximately 125.8 grams of cocaine to defendant DOTSON.

321. On March 18, 2009, defendant DOTSON possessed with intent to distribute approximately 125.8 grams of cocaine.

322. On March 18, 2009, using coded language in a telephone conversation, defendant GARCIA told defendant OLEA that he wanted to purchase two ounces, or approximately 56 grams, of cocaine from defendant OLEA.

323. On March 18, 2009, using coded language in a telephone conversation, defendant OLEA agreed to sell two ounces, or approximately 56 grams, of cocaine to defendant GARCIA.

324. On March 18, 2009, using coded language in a telephone conversation, defendant J. JAUREGUI told defendant THOMAS that defendant THOMAS did not give defendant J. JAUREGUI enough money the previous day to cover a narcotics debt defendant THOMAS owed to him.

325. On March 18, 2009, using coded language in a telephone conversation, defendant THOMAS acknowledged that he owed defendant J. JAUREGUI additional money and agreed to pay defendant J. JAUREGUI another installment of money the next day or the following day.

326. On March 18, 2009, using coded language in a telephone conversation, defendant THOMAS asked defendant J. JAUREGUI to lower the price for cocaine and told defendant J. JAUREGUI that he was going to purchase cocaine from defendant J. JAUREGUI's brother and partner, defendant H. JAUREGUI.

327. On March 18, 2009, using coded language in a telephone conversation, defendant J. JAUREGUI told defendant THOMAS that defendant J. JAUREGUI had the cocaine that defendant THOMAS was going to purchase from defendant H. JAUREGUI.

328. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant H. JAUREGUI that he wanted to purchase the cocaine from defendants H. JAUREGUI and J. JAUREGUI that evening so he could "cook" it into crack cocaine for re-sale that weekend.

329. On March 19, 2009, using coded language in a telephone conversation, defendant H. JAUREGUI offered to sell defendant THOMAS nine ounces, or approximately 252 grams, of cocaine.

330. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to purchase nine ounces, or approximately 252 grams, of cocaine from defendant H. JAUREGUI.

331. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant H. JAUREGUI that he would provide defendants H. JAUREGUI and J. JAUREGUI with money and marijuana in order to pay off the narcotics debt owed to defendant J. JAUREGUI.

332. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant H. JAUREGUI that defendant THOMAS would come pick up nine ounces, or approximately 252 grams, of cocaine from J. JAUREGUI's residence in approximately thirty minutes.

333. On March 19, 2009, using coded language in a telephone conversation, defendant H. JAUREGUI told defendant THOMAS that the cocaine they were selling to defendant THOMAS was good

quality cocaine.

334. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant J. JAUREGUI that defendant THOMAS just spoke with defendant J. JAUREGUI's brother and that defendant THOMAS was coming to pick up the nine ounces of cocaine from defendant J. JAUREGUI.

335. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant J. JAUREGUI that defendant H. JAUREGUI agreed to take the marijuana and additional money to settle the narcotics debt owed to defendant J. JAUREGUI.

336. On March 19, 2009, using coded language in a telephone conversation, defendant J. JAUREGUI agreed to provide defendant THOMAS with nine ounces of cocaine and indicated that he had already wrapped it up very well.

337. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS asked defendant J. JAUREGUI to lower the price for the cocaine he and his brother were selling, and defendant J. JAUREGUI told defendant THOMAS that he would have to speak with defendant H. JAUREGUI about that.

338. On March 19, 2009, defendant J. JAUREGUI distributed approximately nine ounces, or approximately 252 grams, of cocaine to defendant THOMAS.

339. On March 19, 2009, using coded language in a telephone conversation, defendant THOMAS offered to provide defendant CAMPBELL with the nine ounces of cocaine that defendant THOMAS had received from defendants H. JAUREGUI and J. JAUREGUI.

340. On March 19, 2009, using coded language in a telephone conversation, defendant CAMPBELL agreed to purchase nine ounces,

1  or approximately 252 grams, of cocaine from defendant THOMAS.

2       341. On March 19, 2009, defendant THOMAS distributed

3  approximately nine ounces, or approximately 252 grams, of cocaine

4  to defendant CAMPBELL.

5       342. On March 19, 2009, defendant CAMPBELL possessed with

6  intent to distribute approximately nine ounces, or approximately

7  252 grams, of cocaine.

8       343. On March 20, 2009, defendant CAMPBELL told defendant

9  THOMAS that the cocaine defendant THOMAS provided the previous

10  day was poor quality cocaine and was not easily "cooked" into

11  crack cocaine.

12       344. On March 20, 2009, defendant THOMAS agreed to take back

13  the poor quality cocaine he provided to defendant CAMPBELL and to

14  give defendant CAMPBELL his money back.

15       345. On March 20, 2009, defendant THOMAS complained to J.

16  JAUREGUI about the poor quality of the cocaine J. JAUREGUI and H.

17  JAUREGUI sold to defendant THOMAS the previous day.

18       346. On March 25, 2009, using coded language in a telephone

19  conversation, defendant GARCIA told defendant OLEA that he wanted

20  to purchase one ounce, or approximately 28 grams, of cocaine from

21  defendant OLEA.

22       347. On March 25, 2009, using coded language in a telephone

23  conversation, defendant OLEA said he did not have the amount of

24  cocaine requested by defendant GARCIA at that time, but defendant

25  OLEA agreed to sell a different quantity of cocaine to defendant

26  GARCIA instead.

27       348. On March 26, 2009, defendant GARCIA and defendant OLEA

28  arranged to meet for defendant GARCIA to purchase cocaine for

some waiting customers.

349. On March 29, 2009, using coded language in a telephone conversation, defendant SANDERS ordered one-half ounce, or approximately 12.5 grams, of crack cocaine from defendant THOMAS.

350. On March 29, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute one-half ounce, or approximately 12.5 grams, of crack cocaine to defendant SANDERS.

351. On April 1, 2009, using coded language in a telephone conversation, defendant SANDERS ordered two ounces, or approximately 50 grams, of crack cocaine from defendant THOMAS.

352. On April 1, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute two ounces, or approximately 50 grams, of crack cocaine to defendant SANDERS.

353. On April 1, 2009, defendant THOMAS distributed approximately two ounces, or approximately 50 grams, of crack cocaine to defendant SANDERS.

354. On April 1, 2009, defendant SANDERS possessed with intent to distribute approximately two ounces, or approximately 50 grams, of crack cocaine.

355. On May 22, 2009, using coded language in a telephone conversation, defendant GALLOWAY asked defendant THOMAS about the quantity and quality of crack cocaine that defendant THOMAS had available to sell to defendant GALLOWAY.

356. On May 22, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to provide defendant GALLOWAY with nine ounces, or approximately 225 grams, of crack cocaine in approximately one hour.

357. On May 22, 2009, using coded language in a telephone conversation, defendant GALLOWAY agreed to purchase nine ounces, or approximately 225 grams, of crack cocaine from defendant THOMAS in approximately one hour.

358. On May 23, 2009, using coded language in a telephone conversation, defendant BORERO ordered one ounce, or approximately 25 grams, of crack cocaine from defendant THOMAS.

359. On May 23, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute one ounce, or approximately 25 grams, of crack cocaine to defendant BORERO.

360. On May 23, 2009, defendant THOMAS distributed approximately one ounce, or approximately 25 grams, of crack cocaine to an unknown co-conspirator who received it on behalf of defendant BORERO.

361. On May 23, 2009, defendant BORERO possessed with intent to distribute approximately one ounce, or approximately 25 grams, of crack cocaine.

362. On May 27, 2009, using coded language in a telephone conversation, defendant GALLARDO asked defendant THOMAS if he was ready to purchase one-half kilogram of cocaine.

363. On May 27, 2009, using coded language in a telephone conversation, defendant GALLARDO told defendant THOMAS that defendant GALLARDO's supplier was selling kilograms of cocaine for $23,000 per kilogram.

364. On May 27, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant GALLARDO that he would call when he had half of the money for the one-half kilogram of cocaine and told defendant GALLARDO that he was

56

willing to pay between $21,000 and $22,000 per kilogram of cocaine.

365. On May 28, 2009, using coded language in a telephone conversation, defendant GALLARDO offered to sell one kilogram of cocaine to defendant THOMAS for $22,000.

366. On June 7, 2009, using coded language in a telephone conversation, defendants THOMAS and GALLARDO agreed to meet the following day to conduct a cocaine transaction.

367. On June 8, 2009, defendant GALLARDO distributed approximately one kilogram of cocaine to defendant THOMAS.

368. On June 8, 2009, defendant THOMAS possessed with intent to distribute approximately one kilogram of cocaine.

369. On June 8, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant GALLARDO to tell his cocaine supplier that the amount of cocaine delivered by defendant GALLARDO was short.

370. On June 8, 2009, using coded language in a telephone conversation, defendant THOMAS told defendant A. HORSLEY that defendant THOMAS needed to collect money owed by defendant A. HORSLEY for previous cocaine sales to defendant A. HORSLEY.

371. On June 30, 2009, using coded language in a telephone conversation, defendant TYLER ordered four and one-half ounces, or approximately 112 grams, of crack cocaine from defendant THOMAS.

372. On June 30, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to distribute four and one-half ounces, or approximately 112 grams, of crack cocaine to defendant TYLER.

373. On June 30, 2009, defendant THOMAS distributed approximately four and one-half ounces, or approximately 112 grams, of crack cocaine to defendant TYLER.

374. On June 30, 2009, defendant TYLER possessed with intent to distribute approximately four and one-half ounces, or approximately 112 grams, of crack cocaine.

375. On July 2, 2009, using coded language in a telephone conversation, defendant TYLER complained to defendant THOMAS that customers were complaining that the crack cocaine defendant THOMAS was selling was too "pasty."

376. On July 1, 2009, using coded language in a telephone conversation, defendant THOMAS agreed to provide defendant REDD with cocaine once defendant THOMAS could obtain it from defendant OLEA.

377. On July 1, 2009, using coded language in a telephone conversation, defendant THOMAS ordered one-half kilogram of cocaine from defendant OLEA on behalf of defendant REDD.

378. On July 1, 2009, using coded language in a telephone conversation, defendant OLEA agreed to distribute one kilogram of cocaine to defendant THOMAS.

379. On July 1, 2009, using coded language in a telephone conversation, defendant REDD asked defendant THOMAS to assist him by providing defendant REDD with cocaine on credit.

380. On July 1, 2009, using coded language in a telephone conversation, defendant JOHNNIE PURVIS told defendant THOMAS that customers were complaining about the poor quality of the cocaine provided by defendant OLEA.

381. On July 1, 2009, using coded language in a telephone

conversation, defendant OLEA told defendant THOMAS that the cocaine defendant OLEA would provide defendant THOMAS later that day was good quality cocaine.

382. On July 1, 2009, defendant GAMBOA distributed approximately 996.4 grams of cocaine to defendant OLEA.

383. On July 1, 2009, defendant OLEA possessed with intent to distribute approximately 996.4 grams of cocaine.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 11, 2008, in Los Angeles County, within the Central District of California, defendant ROBERT LEE CAMPBELL JR., also known as ("aka") "Bink," aka "Yank," and defendant TROND THOMAS SR., aka "Tricky Trond," aka "Trick," knowingly and intentionally distributed at least five grams, that is, approximately 138.6 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about April 22, 2008, in Los Angeles County, within the Central District of California, defendant ANTONIO DONTA HORSLEY, also known as ("aka") "Tonio," knowingly and intentionally distributed at least five grams, that is, approximately 49.1 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about April 24, 2008, in Los Angeles County, within the Central District of California, defendant WILBUR GENE GAINES JR., also known as ("aka") "Will," knowingly and intentionally distributed at least five grams, that is, approximately 49.3 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about April 30, 2008, in Los Angeles County, within the Central District of California, defendant ANTONIO DONTA HORSLEY, also known as ("aka") "Tonio," knowingly and intentionally distributed at least five grams, that is, approximately 68.1 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

1

COUNT SIX

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

3      On or about May 6, 2008, in Los Angeles County, within the

4  Central District of California, defendant WILBUR GENE GAINES JR.,

5  also known as ("aka") "Will," knowingly and intentionally

6  distributed at least five grams, that is, approximately 73.6

7  grams, of a mixture or substance containing a detectable amount

8  of cocaine base in the form of crack cocaine, a schedule II

9  narcotic drug controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about June 10, 2008, in Los Angeles County, within the Central District of California, defendant ANTONIO DONTA HORSLEY, also known as ("aka") "Tonio," knowingly and intentionally distributed at least five grams, that is, approximately 48.6 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about October 1, 2008, in Los Angeles County, within the Central District of California, defendant WILBUR GENE GAINES JR., also known as ("aka") "Will," knowingly and intentionally possessed with intent to distribute approximately 12.92 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

1
2
3
4
5
6
7
8

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about October 23, 2008, in Los Angeles County, within the Central District of California, defendant GREGORY JOHN JACKSON knowingly and intentionally possessed with intent to distribute approximately 5.4 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about December 4, 2008, in Los Angeles County, within the Central District of California, defendant TROND THOMAS SR., also known as ("aka") "Tricky Trond," aka "Trick," knowingly and intentionally distributed at least fifty grams, that is, approximately 612.5 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about December 4, 2008, in Los Angeles County, within the Central District of California, defendant ANTWOINE DWAYNE REDD, also known as ("aka") "Spark," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 612.5 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about December 4, 2008, in Los Angeles County, within the Central District of California, defendant TROND THOMAS SR., also known as ("aka") "Tricky Trond," aka "Trick," knowingly and intentionally distributed at least five grams, that is, approximately 118.6 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about December 4, 2008, in Riverside County, within the Central District of California, defendant LARHONDA TENISHA DEVINE, also known as ("aka") "Tenisha," aka "Rachel," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 118.6 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about January 6, 2009, in Los Angeles County, within the Central District of California, defendant JAMES ANDREW STARKEY III, also known as ("aka") "Earl," aka "E," knowingly and intentionally distributed approximately 3.7 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about January 8, 2009, in Los Angeles County, within the Central District of California, defendant TROND THOMAS SR., also known as ("aka") "Tricky Trond," aka "Trick," knowingly and intentionally distributed at least fifty grams, that is, approximately 470.9 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii)]

On or about January 8, 2009, in Riverside County, within the Central District of California, defendant ANTWOINE DWAYNE REDD, also known as ("aka") "Spark," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 470.9 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 3, 2009, in Los Angeles County, within the Central District of California, defendant JAMES ANDREW STARKEY III, also known as ("aka") "Earl," aka "E," knowingly and intentionally distributed approximately 11.2 grams of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 5, 2009, in Los Angeles County, within the Central District of California, defendants JERMAINE DEVON PURVIS, also known as ("aka") "Mainer," aka "Bo-Bo," aka "Jerry," JAMES ANDREW STARKEY III, aka "Earl," aka "E," and KIMBERLEY ANN GOBERT knowingly and intentionally distributed at least five grams, that is, approximately 73.2 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 12, 2009, in Los Angeles County, within the Central District of California, defendants JERMAINE DEVON PURVIS, also known as ("aka") "Mainer," aka "Bo-Bo," aka "Jerry," and JAMES ANDREW STARKEY III, aka "Earl," aka "E," knowingly and intentionally distributed at least five grams, that is, approximately 73.4 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 12, 2009, in Los Angeles County, within the Central District of California, defendant ROBERT LEE CAMPBELL JR., also known as ("aka") "Bink," aka "Yank," knowingly and intentionally distributed at least five grams, that is, approximately 74.3 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-ONE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 12, 2009, in Los Angeles County, within the Central District of California, defendant LANCE CARTEE MIXON, also known as ("aka") "Boo," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 74.3 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 12, 2009, in Los Angeles County, within the Central District of California, defendant JESUS LAMBERTO OLEA, also known as ("aka") "Wicky D," aka "Wiz," aka "Weed," aka "Lizard," knowingly and intentionally distributed approximately 500 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about February 12, 2009, in Los Angeles County, within the Central District of California, defendant ROBERT LEE CAMPBELL JR., also known as ("aka") "Bink," aka "Yank," knowingly and intentionally possessed with intent to distribute approximately 500 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 19, 2009, in Los Angeles County, within the Central District of California, defendants JOHNNIE RUSSELL PURVIS JR., also known as ("aka") "Joe-Joe," and JAMES ANDREW STARKEY III, aka "Earl," aka "E," knowingly and intentionally distributed at least five grams, that is, approximately 70.5 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii)]

On or about February 26, 2009, in Los Angeles County, within the Central District of California, defendants JOHNNIE RUSSELL PURVIS JR., also known as ("aka") "Joe-Joe," and JAMES ANDREW STARKEY III, aka "Earl," aka "E," knowingly and intentionally distributed at least five grams, that is, approximately 71.4 grams, of a mixture or substance containing a detectable amount of cocaine base in the form of crack cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 18, 2009, in Los Angeles County, within the Central District of California, defendant TROND THOMAS SR., also known as ("aka") "Tricky Trond," aka "Trick," knowingly and intentionally distributed approximately 125.8 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 18, 2009, in Los Angeles County, within the Central District of California, defendant WYATT DEAN YOUNG knowingly and intentionally distributed approximately 125.8 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

On or about March 18, 2009, in Los Angeles County, within the Central District of California, defendant MICHAEL JEROME DOTSON JR. knowingly and intentionally possessed with intent to distribute approximately 125.8 grams of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT TWENTY-NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

On or about July 1, 2009, in Los Angeles County, within the Central District of California, defendant FERNANDO GAMBOA JR., also known as ("aka") "Fernando Herrera," knowingly and intentionally distributed at least 500 grams, that is, approximately 996.4 grams, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

COUNT THIRTY

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)]

On or about July 1, 2009, in Los Angeles County, within the Central District of California, defendant JESUS LAMBERTO OLEA, also known as ("aka") "Wicky D," aka "Wiz," aka "Weed," aka "Lizard," knowingly and intentionally possessed with intent to distribute at least 500 grams, that is, approximately 996.4 grams, of a mixture or substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance.

A TRUE BILL

_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

ELIZABETH R. YANG
Assistant United States Attorney
Chief, Violent & Organized Crime Section

KEVIN M. LALLY
Assistant United States Attorney
Deputy Chief, Violent & Organized Crime Section

SCOTT M. GARRINGER
SHAWN J. NELSON
Assistant United States Attorneys
Violent & Organized Crime Section

88