ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
SCOTT M. GARRINGER (Cal. SBN 193418)
SHAWN J. NELSON (Cal. SBN 185149)
Assistant United States Attorneys
Violent & Organized Crime Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2417/5339
     Facsimile: (213) 894-3713
     email: scott.garringer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-1119-SJO |
| Plaintiff, | <u>GOVERNMENT'S OPPOSITION TO DEFENDANT ROBERT LEE CAMPBELL JR.'S MOTION TO AMEND/RECONSIDER DETENTION</u> |
| v. | |
| TROND THOMAS SR., et al., | |
| Defendants. | |

Plaintiff United States of America, by and through the United States Attorney for the Central District of California, hereby files this Memorandum of Points and Authorities in Support of its Opposition to Defendant Robert Lee Campbell Jr.'s Motion to Amend/Reconsider Detention.

///

///

///

///

The government's opposition is based on the attached Memorandum of Points and Authorities, the attached Declaration of Scott M. Garringer, the attached exhibits, the files and records of this case, and any argument or evidence presented at the hearing on this matter.

Dated: January 23, 2011            Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


 /S/ Scott M. Garringer
SCOTT M. GARRINGER
SHAWN J. NELSON
Assistant United States Attorneys

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I**

**INTRODUCTION**

On October 21, 2010, Special Agents of the United States Department of Homeland Security ("DHS") and officers of the Los Angeles Police Department arrested defendant Robert Lee Campbell Jr. ("defendant") following a long-term investigation of narcotics trafficking in Wilmington and Long Beach, California. On October 6, 2010, a grand jury returned an indictment charging defendant and 39 other individuals with violations of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(iii): Conspiracy to Distribute More than 50 Grams of Cocaine Base (Crack Cocaine) and Cocaine, and Section 841(a)(1) and 841(b)(1)(A)(iii): Distribution and Possession With Intent to Distribute More than 50 Grams of Cocaine Base (Crack Cocaine) and Cocaine.  Defendant is charged with conspiracy, as well as separate substantive counts of distributing more than 50 grams of crack cocaine (Counts 2 and 20) and possessing with intent to distribute 500 grams of cocaine (Count 23), charges which carry a mandatory minimum sentence of 10 years' imprisonment.  The indictment details defendant's involvement as one of the main crack cocaine suppliers in Wilmington, California and details defendant's conduct in distributing crack cocaine for over thirteen months between February 11, 2008 and March 20, 2009.

At the time of defendant's arrest, law enforcement found and seized from defendant's residence: (1) a duffle bag containing approximately 170 grams of marijuana, packaged in multiple bags, and an unregistered Ruger .22 caliber handgun, which is a

California Assault Weapon; (2) a Glock 23 .40 caliber handgun; (3) a Taurus handgun; (4) 69 rounds of .40 caliber ammunition; (5) 9 rounds of .22 long rifle ammunition; (6) four .40 caliber magazines; (7) one .22 long rifle magazine; and (8) approximately $3,000 in cash. (See Exh. A, at 3; Exh. B, at 3).

On October 21, 2010, defendant had an initial appearance and detention hearing before the Honorable Patrick J. Walsh, United States Magistrate Judge. The government proffered the Pretrial Services Report, the Indictment, and the fact that this is a presumption case in support of its request for detention, arguing that defendant was a risk of nonappearance based on the statutory presumption for narcotics offenses, the potential penalties confronting defendant including imprisonment, and defendant's history of numerous probation revocations, among other factors. The government also argued that defendant was a risk of danger based on: defendant's long-term pattern of distributing crack cocaine during the investigation, defendant's criminal history including a prior firearms offense, and defendant's possession at the time of his arrest of marijuana packaged for sale, an assault weapon, two other firearms, ammunition and thousands of dollars in cash, among other factors. In its initial Pretrial Services Report, the Pretrial Services Office recommended that defendant be released on conditions, including a $50,000 appearance bond without justification. (See 10/21/10 Pretrial Services Report, at 8). Magistrate Judge Walsh temporarily detained defendant pending a further hearing for the parties to provide additional information regarding defendant's role in the offense, including the firearms and drugs seized at the time of defendant's arrest,

and additional information regarding potential sureties. (See 10/25/10 Supplemental Pretrial Services Report, at 2).

On October 25, 2010, Magistrate Judge Walsh held a further hearing regarding the government's request for detention.  At that time, defendant offered his mother, Brenda Campbell, as a potential surety and offered to post Ms. Campbell's property in Colton, California as justification for a proposed bond. (See 10/25/10 Supplemental Pretrial Services Report, at 2).  At that time, Pretrial Services withdrew its recommendation for bail and recommended detention due to defendant's significant role in the instant narcotics trafficking conspiracy and the "alarming" nature of defendant's possession of an assault weapon, drugs, and large amounts of cash at the time of his arrest. (See 10/25/10 Supplemental Pretrial Services Report, at 3).  Magistrate Judge Walsh then granted the government's request for detention and detained defendant pending trial on the grounds of the danger to the community presented by defendant.

On December 29, 2010, defendant filed the instant motion to amend/reconsider detention.  (Def. Motion and Memorandum, at 1-9).  In his motion, defendant does not actually appeal the Magistrate Court's existing detention ruling, but rather seeks a modification and a new release order from this Court, offering new potential sureties, justification assets, and testimonials that had not been presented previously to the Magistrate Court. (Id.).  According to Pretrial Services Officer Ada Castillo-O'Neil, the Pretrial Services Office continues to recommend detention based on the danger to the community presented by defendant in this presumption case.  (Garringer Decl., ¶ 6).

**II**

**LAW AND ARGUMENT**

**A. Applicable Law**

The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. See United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985); United States v. Kouyoumdjian, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. See 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. See Motamedi, 767 F.2d at 1406.

In cases involving narcotics offenses, the Act establishes a rebuttable presumption that a defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e); United States v. Cox, 635 F. Supp. 1047, 1054 (D. Kan. 1986) citing H.R. Rep. at 20, U.S.C.C.A.N. at 3203 (Congress also noted that persons charged with major drug felonies are often in the business of importing or distributed dangerous drugs, and thus "pose a significant risk of pretrial 'recidivism.'"). The presumption exists if there is "probable cause" that the defendant committed a narcotics offense for which a maximum term of imprisonment of ten years or more is prescribed. 18 U.S.C. § 3142(e). Once the

presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption. United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988).

If the defendant proffers evidence to rebut the presumption, the Ninth Circuit has identified several relevant factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); United States v. Winsor, 785 F.2d 755 (9th Cir. 1986); Motamedi, 767 F.2d at 1407.

Congress intended that the statutory presumptions would have a practical effect.  United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985).  The presumptions do not disappear when a defendant meets his or her burden of producing rebuttal evidence. United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1986); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).  The presumptions remain in the case as evidentiary findings militating against release, to be weighed along with other evidence relevant to the factors listed in Section 3142(g). Dominguez, 783 F.2d at 707.  Indeed, the Act's presumption should be added as a significant factor that supports pretrial detention under both rationales for detention.  See United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (the presumption is a factor militating against release); See also United States v.

Cook, 880 F.2d 1158, 1160 (10th Cir. 1989).

**B.   Defendant Has Not Rebutted the Presumption that He is a Danger To The Community, and Defendant Clearly Poses a Significant Danger to the Community**

Defendant has presented no viable facts which are sufficient to rebut the legal presumption that he is a danger to the community.  The facts presented by defendant thus far are that his family is willing to post a $400,000 property bond.  This is wholly insufficient to rebut the presumptions in this case, given defendant's long-term drug trafficking conduct and the arsenal of weapons and marijuana found at the time of defendant's arrest. There is nothing about the bond requested that would effectively prevent defendant from continuing to sell multiple varieties of narcotics, including crack cocaine, powder cocaine, and marijuana if he is released.  Equally important, there is nothing about the bond that would effectively protect the community from defendant continuing to possess firearms, including assault weapons, in furtherance of that drug trafficking activity.  Electronic monitoring would be useless as a prophylactic measure to prevent trafficking in multiple narcotics substances and dangerous firearms.  Defendant will not need to travel at all to continue to sell to customers and/or to employ others in doing so.  The government is concerned that defendant may in fact continue doing so in order to make enough money to reimburse his relatives should he decide to flee in order to avoid a lengthy prison sentence.  The fact that defendant has offered up property does not rebut the presumption of danger to the community that demonstrate that detention is appropriate.  Moreover, as established below, the statutory factors contained in 18 U.S.C.

§ 3142(g) clearly establish that defendant is a danger to the community and should be detained pending trial.

**C.  Statutory Factors Requiring Detention**

    **1.  Nature and Circumstances of the Offenses Charged (18 U.S.C. § 3142(g)(1))**

This factor weighs heavily in favor of detention. The indictment charges defendant with a long-term conspiracy to distribute large quantities of crack cocaine in the Wilmington area. Congress has determined that offenses involving crack cocaine pose a substantial threat to our society. See U.S. Sentencing Comm'n, Special Report to Congress: Cocaine and Federal Sentencing Policy 117-18 (1995) (1995 Report). In particular, Congress found that crack cocaine was likely to (i) induce addiction; (ii) correlate with the incidence of other serious crimes; (iii) implicate especially vulnerable members of society; (iv) cause deleterious physiological effects; and (v) attract youthful users. Id. at 118. Thus, defendant's distribution of large quantities of cocaine base (crack cocaine) clearly demonstrates a danger to the community.

In addition to the long-term conspiracy and distribution of cocaine base (crack cocaine) charged in the indictment, Exhibit B demonstrates that defendant also had in his possession at the time of his arrest a duffle bag containing marijuana, packaged for sale in multiple plastic bags, and a .22 caliber Ruger assault weapon. (Exh. B, at 3). These seizures demonstrate that defendant not only continued his drug trafficking conduct long after the time period addressed in the indictment, but has also branched out to marijuana distribution and is using an assault

7

weapon to do it.  As such, defendant's possession of this firearm in the same duffle bag as his marijuana inventory plainly gives rise to an as-yet-uncharged violation of Title 18, United States Code, Section 924(c).  Defendant was also found to be in possession of two other firearms and numerous magazines and rounds of ammunition at the time of his arrest, further demonstrating the serious and violent nature of his drug trafficking conduct.  The "alarming" nature of these seizures contributed significantly to the Pretrial Services Office withdrawing its recommendation for bond and recommending detention in this case.  (See 10/25/10 Supp. PTS Report, at 3).

     Also seized at the time of defendant's arrest was approximately $3,000 in cash (originally believed to be approximately $7,000 in cash).  (See Exh. A, at 3).  Given defendant's drug trafficking conduct, the government is obviously concerned that this large quantity of cash that defendant had on hand represents the proceeds of narcotics trafficking.  Indeed, during the course of this investigation, on February 13, 2009, officers conducted a traffic stop of defendant and seized approximately 500.0 grams of cocaine and $1,237 in cash (see Exh. C, at 9-10), so defendant's October 21, 2010 seizure was not the first time that authorities have seized suspected drug proceeds (or drugs) from defendant.  In his motion, defendant argues that the "funds were from a rental he takes care of for his mother and money he had taken out of the credit union."  (Def. Mem., at 2).  However, defendant's proffered, but unproven, explanations for the large amount of cash he had in his possession do little to ameliorate the likelihood that the cash represents drug proceeds.

For example, the cashiers check defendant submits (as the last page of his exhibits) as the source of some of that currency from a renter, Debbie Duran, is actually dated October 25, 2010, four days *after* the currency was seized, and therefore could not have been the true source of the seized funds.

As reflected on page 3 of the October 25, 2010 Supplemental Pretrial Services Report, it is important to note that these seizures, as well as much of defendant's illegal conduct charged in the indictment, took place at defendant's residence where defendant's small children (ages 10 and 1) reside. (See 10/25/10 Supp. PTS Report, at 3).

Taken together, defendant's conduct over a period of approximately three years clearly demonstrates a danger to the community that pre-trial release and bail will not protect against.

### 2. Weight of the Evidence Against Defendant (18 U.S.C. § 3142(g)(2))

The evidence against defendant is overwhelming. The investigation involved the use of a confidential informant who dealt directly with defendant, and many of the overt acts described in the indictment were evidenced by Title III wiretap interceptions over defendant's own telephone. As charged in Count Two, law enforcement has seized approximately 138.6 grams of crack cocaine provided by defendant to an individual who later became a confidential informant, as well as 74.3 grams of crack cocaine from a co-defendant (Lance Mixon) who had just been observed purchasing narcotics from defendant, following intercepted telephone calls setting up the three-ounce crack

purchase. (See Exh. D, at 4-5). On February 13, 2009, defendant himself was stopped by law enforcement and found to be in possession of 500.0 grams of cocaine following a purchase from another co-defendant (Jesus Olea), again following surveillance of the transaction and intercepted telephone calls setting up the transaction. (See Exh. C, at 9-10). Thus, the weight of the evidence strongly demonstrates that defendant should be detained pending trial.

### 3. Defendant's History and Characteristics (18 U.S.C. § 3142(g)(3)(A))

The indictment demonstrates that defendant engaged in a prolonged patterned of distributing narcotics. Defendant also has a significant, long-term criminal history of convictions, albeit no felony convictions. Defendant has a prior conviction for carrying a loaded firearm in a public place (1995), as well as convictions for driving while under the influence (1992), disturbing the peace (1990), "fight/noise/offensive words" (1990), and driving without a license (1995). (See 10/21/10 PTS Report, at 4-5). Defendant has also been arrested for grand theft auto (1988) and possession of forged notes (1992). (See 10/21/10 PTS Report, at 5). Further, defendant's prior convictions have often resulted in probation, and defendant has accumulated five separate probation revocations in his various criminal cases (see 10/21/10 PTS Report, at 4-5), demonstrating exactly how defendant responds to Court-ordered supervision like the pretrial release he is requesting now. If defendant cannot avoid having his probation revoked five separate times during periods when he is supposed to be on his best behavior, he cannot

demonstrate that he is not a danger to the community, and he certainly cannot rebut the statutory presumption that he presents such a danger.

The numerous letters attached to his motion from friends and family members are certainly relevant to defendant's history and characteristics, but unfortunately offer little more than biased testimonials from loved ones.  It is important to note that none of those letters describing defendant as a "man of integrity and trustworthiness" acknowledge or make any reference to defendant's long-term drug trafficking conduct, firearms activity, convictions regarding firearms, driving while under the influence, and disturbing the peace, or his history of probation violations in violation of Court-ordered supervision.

For all of these reasons, the government submits that defendant should continue to be detained because he presents a danger to the community that pretrial release and bond cannot protect against.

**D.  Defendant Has Not Rebutted the Presumption that He is a Flight Risk and No Combination of Conditions Will Reasonably Assure His Appearance at Trial**

In addition to the government's primary concerns regarding danger, defendant should also be detained as a risk of nonappearance.  The charges in the indictment carry a maximum penalty of life imprisonment, and thus carry with them a presumption of flight.  18 U.S.C. § 3142(e).  If convicted, defendant faces a mandatory minimum sentence of ten years imprisonment on the conspiracy charge and the two charges of distribution of cocaine base (crack cocaine).  See 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii).  Although defendant proffers

property that the government acknowledges is not insubstantial, defendant cannot rebut the presumption that he is a flight risk given the lengthy mandatory minimum sentence defendant faces in this case.  Additionally, if the government elects to charge defendant with a violation of Title 18, United States Code, Section 924(c) based on his possession of the assault weapon in furtherance of his drug trafficking conduct, defendant will face an additional five-year mandatory sentence which must run consecutively to any other sentence.  See 18 U.S.C. § 924(c). Given the combination of the statutory presumption, a lengthy imprisonment term, and the likelihood of additional drug trafficking and § 924(c) charges to further lengthen defendant's mandatory sentence, defendant presents a clear risk of nonappearance.  Defendant has failed to rebut the presumption of flight or the factors demonstrating that he is a flight risk, so defendant should also be detained pending trial on that ground as well.

**E.  The Magistrate Court Properly Considered Alternatives to Detention, But Appropriately Detained Defendant Pending Trial Because He Has Not Rebutted the Presumption that He is Danger to the Community**

In his motion, defendant argues that the Magistrate Court "failed to consider alternatives to detention as required by law." (See Def. Mem., at 5).  This allegation is puzzling, because not only did Pretrial Services actually initially recommend an alternative to detention (i.e., release on an appearance bond, see 10/21/10 Pretrial Services Report, at 8), but Magistrate Judge Walsh actually continued defendant's initial detention hearing from October 21, 2010, to October 25, 2010 in

12

order to obtain additional information about potential sureties (see 10/25/10 Supplemental Pretrial Services Report, at 2), showing that the Court plainly did consider alternatives to detention. It was only when the Court believed that it had full information regarding defendant's then-proposed sureties and justification assets, as well as the seizures of firearms and drugs at the time of defendant's arrest, that the Court declined to order release and detained defendant due to the danger he poses to the community. Defendant submits no evidence or portion of the record which demonstrates that the Magistrate Court failed to consider alternatives to detention or failed to make necessary findings regarding the danger presented by defendant.

### III

### CONCLUSION

For the reasons set forth herein, the government respectfully requests that this Court deny defendant Campbell's Motion to Amend/Reconsider Detention and continue to detain defendant pending trial.

Dated: January 23, 2011     Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

 /S/ Scott M. Garringer
SCOTT M. GARRINGER
SHAWN J. NELSON
Assistant United States Attorneys

Attorneys for Plaintiff
United States of America

13