# EXHIBIT A



REQUESTED BY: DONOVAN, JAMES P

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE    1 |
| | CASE NUMBER LA13CR08LA0007 |

TITLE: BRAYAN PEREZ ET AL

CASE STATUS:      INTERIM RPT

| REPORT DATE 111910 | DATE ASSIGNED 120407 | PROGRAM CODE 301 | REPORT NO. 139 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: OPERATION RED REIN TAKEDOWN OCTOBER 21, 2010

SYNOPSIS:

Homeland Security Investigations (HSI), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drug/street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

This Report of Investigation (ROI) documents the arrests and seizures related to the Operation Red Rein Takedown.

| DISTRIBUTION: SACLA | SIGNATURE: DONOVAN          JAMES    P  SPECIAL AGENT |
|---|---|
| | APPROVED: CHEVALIER       PATRICK   S  OI GRP SUPERVISOR |
| | ORIGIN OFFICE: LA LOS ANGELES, CA - SA | TELEPHONE: 562 719 7424 |
| | | TYPIST: DONOVAN |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

EXHIBIT A

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE     2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 139 |

CASE PROGRAM CODES:

301 CONTROLLED SUBSTANCE   B7U TECHNICAL SURVEILLAN   YS0 GANGS
YL0 DRUG SMUGGLING         295 ICE INITIATED TITLE

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 139 |

**DETAILS OF INVESTIGATION:**

Homeland Security Investigations (HSI), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drug/street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

On October 21, 2010, HSI agents, ATF agents, LAPD officers and detectives, U.S. Marshals, and several local police departments conducted a takedown operation regarding the 61 individuals indicted by a federal grand jury related to Operation Red Rein. A summary of the arrests and seizures occurring during this operation are contained herein.

LaSania Rae ADAMS, born ▮▮▮▮▮▮▮▮▮, was arrested at ▮▮▮▮▮▮ Los Angeles, California.

Roy BORERO, born ▮▮▮▮▮▮▮▮ was arrested at ▮▮▮▮▮▮▮▮ California.

Robert CAMPBELL, born ▮▮▮▮▮▮ was arrested at ▮▮▮▮▮▮ ▮▮▮▮, California. The following items were recovered:  a .22 caliber handgun (unregistered, SEE LA13CR08LA0007140), a Glock 23 .40 caliber handgun, a Taurus handgun, 69 rounds of Smith and Wesson .40 caliber ammunition, nine rounds of .22 long rifle ammunition, four Smith and Wesson .40 caliber magazines, one .22 long rifle magazine, approximately 170 grams of marijuana, approximately $3000 United States Currency, and a 2000 Mercedes sedan (seized, SEE LA13CR08LA0007071).

Daniel Soto CANDIA, born ▮▮▮▮▮▮▮▮ was arrested at ▮▮▮▮▮ ▮▮, California

Ricardo CEJA, born ▮▮▮▮▮▮▮ was arrested at 2▮▮▮▮ California.

Michael DOTSON, born ▮▮▮▮▮▮ was arrested at 7▮▮ ▮▮▮▮▮ California ▮▮▮  During a parole search of the location 87 marijuana plants (weighing approximately 162.4 gross grams) were found in the closet of DOTSON's bedroom.

Manuel ESTRADA, born ▮▮▮▮▮▮ , was arrested at ▮▮▮▮ ▮▮▮▮▮ California.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    4 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N  C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 139 |

Deisy GALLARDO, born ▓▓▓▓▓▓▓, was arrested at ▓▓▓▓▓▓▓ ▓▓▓▓▓ California. During a search of the location, a Mossberg shotgun, 180 shotgun rounds and $4744.00 were recovered from the location. The U.S. currency was released to D. GALLARDO's brother, Azael Rios.

Marcos Louie GALLARDO, born ▓▓▓▓▓▓▓▓▓▓ was arrested at ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓, California.

Fernando GAMBOA, born ▓▓▓▓▓▓▓▓▓ was arrested at ▓▓▓▓ ▓▓▓▓▓▓▓▓ California.

Ricky GARCIA, born ▓▓▓▓▓▓▓▓▓ was arrested at ▓▓▓▓▓▓▓▓ ▓▓▓▓▓ California.

Brett HOLBORN, born ▓▓▓▓▓▓▓▓▓, was arrested at ▓▓▓ ▓▓▓▓▓ California. A state search warrant was executed and a methamphetamine lab was discovered. Approximately one ounce of methamphetamine and $1194.00 were recovered.

Antonio HORSLEY, born ▓▓▓▓▓▓▓▓▓ was arrested at ▓▓▓▓▓▓ ▓▓▓▓▓ California.

Hadalberto JAUREGUI (H. JAUREGUI), born ▓▓▓▓▓▓▓▓, was arrested during a consensual search of H. JAUREGUI's residence: approximately 1582.6 gross grams of marijuana, ten rounds of 9mm ammunition, 127 rounds of .380 ammunition, 60 rounds of .223 ammunition, five handgun magazines, three scales, one trough with marijuana residue and one holster.

Jose Alejandro JAUREGUI, born ▓▓▓▓▓▓▓▓, was arrested at ▓▓▓▓▓▓ ▓▓▓▓▓ California.

Julian LEYBA, born ▓▓▓▓▓▓▓▓, was arrested at ▓▓▓▓▓▓▓ ▓▓▓▓▓ California. The following items were recovered during the execution of a federal search warrant of LEYBA's residence: approximately 3.06 gross grams of cocaine, .087 gross grams of rock cocaine, miscellaneous documents and a razor with cocaine residue.

Anthony J LEMOS, born ▓▓▓▓▓▓▓ was arrested at ▓▓▓▓▓▓ ▓▓▓▓▓▓California.

Rigoberto LOZANO, born ▓▓▓▓▓▓▓▓▓ was arrested at ▓▓▓▓▓▓▓ ▓▓▓▓▓, California.

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 5 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 139 |

Alfred MCCULLIN, born ~~████████████~~, was arrested at ~~████████████~~ California.

Susie MOSQUEDA, born ~~████████████~~, was arrested at ~~████████████~~ California.

Christopher NEWELL, born ~~████████████~~ was arrested at ~~████████████~~ California.

Jesus OLEA, born ~~████████████~~, was arrested at ~~████████████~~, California.

Christine Corine POMPA, born ~~████████████~~, was arrested at ~~████████████~~, California.

Johnnie PURVIS JR, born ~~████████████~~ was arrested at ~~████████████~~ California.

Antwoine Dwayne REDD, born ~~████████████~~ was arrested at ~~████████████~~ California.

William SEARCY, born ~~████████████~~ was arrested at ~~████████████~~ California.

Ernesto SIERRA, born ~~████████████~~ was arrested at ~~████████████~~ California.

James Andrew STARKEY III, born ~~████████████~~, was arrested at ~~████████████~~ California.

Trond THOMAS, born ~~████████████~~ was arrested at ~~████████████~~ California. During a consensual of THOMAS' residence, approximately 1635.90 grams of marijuana, 1 scale with marijuana residue and a duffle bag with marijuana residue were recovered.

Willie TYLER, born ~~████████████~~ was arrested at ~~████████████~~ California.

Kerry WILLIAMS, born ~~████████████~~ was arrested at ~~████████████~~ California.

Wyatt YOUNG, born ~~████████████~~ was arrested at ~~████████████~~ California.

Andres ZUNIGA, born ~~████████████~~ was arrested at ~~████████████~~

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    6 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 139 |

████████ California.

Carlos ZUNIGA, born ██████████, was arrested at ██████████████. A federal search warrant was executed at the above address. During the search, approximately one pound of methamphetamine, two pounds of marijuana, ten ounces of heroin, and $7500.00 in U.S. Currency were recovered.

34 suspects were apprehended during the operation and 5 additional suspects were already in custody on other charges at the time of the operation.

Maximiano ALONSO, born ██████████, is currently in federal custody in Texas.

Wilbur G. GAINES, born ██████████, is currently in custody at California Department of Corrections (CDC).

Fredy Alfonso LARA, born ██████████ is currently in custody at the Los Angeles County Jail in Castaic, California.

David J. LORENZ, born ██████████, is currently in custody at the Los Angeles County Jail.

Vincent J. LOZANO, born ██████████ is currently in custody at CDC.

At the conclusion of the operation, a total of 39 suspects were in custody. 22 individuals remain outstanding with federal arrest warrants. Efforts by HSI and LAPD to apprehend these individuals are underway.

This investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

# EXHIBIT B

REQUESTED BY: DONOVAN, JAMES P

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE   1 |
| | CASE NUMBER LA13CR08LA0007 |

TITLE: BRAYAN PEREZ ET AL

CASE STATUS:    INTERIM RPT

| REPORT DATE 102510 | DATE ASSIGNED 120407 | PROGRAM CODE 301 | REPORT NO. 140 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: ASSAULT WEAPON FOUND DURING ARREST OF ROBERT CAMPBELL

SYNOPSIS:

The U.S. Department of Homeland Security (HSI), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drug/street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

This Report of Investigation (ROI) documents an assault weapon found during the arrest of Robert CAMPBELL.

| DISTRIBUTION: SACLA | SIGNATURE: DONOVAN        JAMES      P  SPECIAL AGENT |
|---|---|
| | APPROVED: CHEVALIER        PATRICK      S  OI GRP SUPERVISOR |
| | ORIGIN OFFICE: LA LOS ANGELES, CA - SA |  TELEPHONE: 562 719 7424 |
| | TYPIST: DONOVAN |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

EXHIBIT B



O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 140 |

CASE PROGRAM CODES:

301 CONTROLLED SUBSTANCE   B7U TECHNICAL SURVEILLAN   YS0 GANGS
YL0 DRUG SMUGGLING         295 ICE INITIATED TITLE

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   3 |
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 140 |

DETAILS OF INVESTIGATION:

The U.S. Department of Homeland Security (HSI), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drug/street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

On October 21, 2010, Robert CAMPBELL, born ████████████████, was arrested pursuant to a federal arrest warrant for violation of Title 21 USC 841, possession of cocaine with intent to distribute and Title 21 USC 846, conspiracy.

Present during the service of the federal arrest warrant were LAPD officers and HSI Special Agent (SA) Brian Nellermoe. As LAPD officers secured CAMPBELL's residence at ████████████████████ California, officers cleared a shed behind the residence. During the security sweep of the shed, LAPD officers encountered a duffle bag. Officers immediately recognized the smell of marijuana emanating from the bag and investigated the odor. Inside the bag, officers found approximately 170 grams of marijuana, packaged in multiple plastic bags, and a .22 caliber Ruger handgun (hereinafter "Ruger").

ATF agents took possession of the handgun. ATF SA Bryan Briggs advised HSI SA James Donovan that the Ruger was unregistered and is classified as a California Assault Weapon. The Ruger is classified as an assault weapon due to the fact that it is a semiautomatic pistol that has the capacity to accept a detachable magazine and a threaded barrel, capable of accepting a falsh suppressor, forward handgrip, or silencer (CA PC 12276.1(a)(4)(A)).

This investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

# EXHIBIT C

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N | PAGE    1 |
| | CASE NUMBER LA13CR08LA0007 |

TITLE: BRAYAN PEREZ ET AL

CASE STATUS:    INTERIM RPT

| REPORT DATE 011110 | DATE ASSIGNED 120407 | PROGRAM CODE 301 | REPORT NO. 071 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: SEIZURE OF 515.3 G OF CRACK COCAINE FROM CAMPBELL ON FEB. 13, 2009.

SYNOPSIS:
The United States Immigration and Customs Enforcement (ICE), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drugs/ street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division. The investigation is targeting street gang members based in and around the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

This Report of Investigation (ROI) documents the seizure of approximately 515.3 grams of crack cocaine from Robert Lee CAMPBELL JR. on February 13, 2009.

| DISTRIBUTION: SACLA | SIGNATURE: DENNEWITZ      JILL      N  SPECIAL AGENT |
|---|---|
| | APPROVED: CHEVALIER      PATRICK      S  OI GRP SUPERVISOR |
| | ORIGIN OFFICE: LA LOS ANGELES, CA - SA | TELEPHONE: 562 624 3900 |
| | | TYPIST: DENNEWITZ |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

EXHIBIT C

OA01634

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

CASE PROGRAM CODES:

301 CONTROLLED SUBSTANCE   B7U TECHNICAL SURVEILLAN   YS0 GANGS
YL0 DRUG SMUGGLING

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01635

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE     3 |
| | CASE NUMBER LA13CR08LA0007 |
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | REPORT NUMBER: 071 |

DETAILS OF INVESTIGATION:

The United States Immigration and Customs Enforcement (ICE), Office of the
Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint drugs/
street gang investigation with the U.S. Department of Justice, Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office
(LBFO) and the Los Angeles Police Department (LAPD), Harbor Division. The
investigation is targeting street gang members based in and around the Long
Beach and Wilmington, California areas and their Mexican drug sources of
supply.

On February 11, 2009; at approximately 10:14.m., contract linguists monitoring
Target Telephone (424) 224-3872 (TT-3) used by Trond THOMAS (THOMAS)
intercepted an outgoing telephone call (#3124) to telephone number (310)
505-7313 (TT-6) used by Jesus OLEA (OLEA). During the call, THOMAS asked OLEA
if he (OLEA) had any "goods" (drugs). OLEA affirmed. THOMAS told OLEA that
CAMPBELL had called needing "some" (drugs) but that THOMAS would not "do
anything for free." OLEA agreed. THOMAS said that if OLEA wanted to "deal"
(drugs) with CAMPBELL then he would provide OLEA with CAMPBELL'S phone number
and CAMPBELL with OLEA'S phone number. THOMAS stated that CAMPBELL has been
trying to call him (THOMAS), for "two or three days." OLEA replied that he did
not want to go "there" (an area of Wilmington, California known as Ghost Town
where East Side Pain (ESP) gang members, formally Ghost Town Bloods conduct
gang activity to include drug and firearms trafficking). THOMAS replied that
CAMPBELL was not in the "Ghost" (Ghost Town) and explained to OLEA, that
CAMPBELL wanted to "go half" (split a kilo in half), but he (THOMAS) was not
ready. THOMAS stated, "That's on you (OLEA) and him (CAMPBELL)." OLEA agreed
with THOMAS. THOMAS then stated, "I mean, you all, you all know each other.
You know what I'm saying." OLEA agreed. THOMAS told OLEA, "So shit, if you
want it you know. I think he got twelve (12) times ($12000)." OLEA told
THOMAS, "Let me see what's up. Call me up after six (6:00)." THOMAS agreed.

On February 12, 2009, at approximately 1:15 p.m., contract linguists
monitoring TT-3 used by THOMAS intercepted an outgoing telephone call (#13731)
to TT-6 used by OLEA. During the call, THOMAS stated that he "needed to catch
up" with OLEA because he (THOMAS) was leaving for a couple days. OLEA affirmed
and said he had to get "that," (money owed to OLEA from THOMAS). THOMAS
replied that he had most of "it" (money) and that he would call when he got
home. OLEA asked THOMAS if he could "meet right now." THOMAS said that he
could not meet right then. THOMAS went on to say that he (THOMAS) was going
around looking for some change (money) to take with me. THOMAS agreed to call
in an hour or two. OLEA agreed and asked THOMAS about "his boy" (CAMPBELL).
THOMAS stated that (CAMPBELL) still wanted "it" (drugs). OLEA affirmed and
told THOMAS to call him (CAMPBELL) and OLEA would go see him (THOMAS) so they

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01636

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    4 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

could talk.

At approximately 2:45 p.m., contract linguists monitoring TT-6 used by OLEA intercepted an outgoing telephone call (#3318) to TT-3 used by THOMAS. During the call, OLEA asked how long THOMAS would be. THOMAS stated that he would not leave until 8 o'clock and would call OLEA a few hours before he would leave then stated that he had "something" (money) for OLEA.

At approximately 6:00 p.m., contract linguists monitoring TT-3 used by THOMAS intercepted an incoming telephone call (13825) from TT-6 used by OLEA. During the call, THOMAS asked OLEA about his whereabouts. OLEA stated that he (OLEA) was over here (unknown location) and he could be there by "seven" (7:00). THOMAS told OLEA to call before coming over and to makes sure that he comes over before 8 (p.m.). THOMAS stated he would be leaving at 8 (p.m.).

At approximately 7:13 p.m., contract linguists monitoring TT-6 used by Jesus OLEA intercepted an outgoing telephone call (#3354) to telephone number (424) 224-3872 (TT-3) used by THOMAS. During the call, THOMAS greeted OLEA as "Weed" and OLEA asked if THOMAS was there (unknown location). THOMAS negated and said that he would be back in 15 minutes. THOMAS further stated that he would call OLEA when he (THOAMS) was heading back and stated, "I gotch you," (meaning THOMAS had OLEA'S money).

At approximately 7:37 p.m., contract linguists monitoring TT-6 used by OLEA intercepted an outgoing telephone call (#3362) to TT-3 used by THOMAS. During the call, OLEA stated, "I'm right here TRICK," (THOMAS' moniker). THOMAS advised that he was 5 minutes away that he (THOMAS) was coming down Avalon Boulevard by Scottsdale Avenue (in Carson, California). OLEA affirmed.

At approximately 8:28 p.m., contract linguists monitoring Target Telephone (562) 313-3980 (TT-4) used by CAMPBELL intercepted an outgoing telephone call (#7579) to TT-3 used by THOMAS. During the call, CAMPBELL wanted to know the "ticket total" (price of the drugs). THOMAS replied that it was the same price that he (THOMAS) told him (CAMPBELL) yesterday. THOMAS asked CAMPBELL if he was going to "look out for him" (pay THOMAS a brokerage fee). THOMAS reiterated, "You look out for me when I get back Sunday night or Monday morning, huh?" CAMPBELL responded, "Yeah, yeah, I got you, shit if it go down, yeah." THOMAS told CAMPBELL that OLEA could do that deal and that he (THOMAS) had just talked with him (OLEA) and that he just came by. THOMAS gave CAMPBELL the following phone number (310) 505-7313 (TT6). THOMAS told CAMPBELL that he (THOMAS) was going to call OLEA and let him (OLEA) know that CAMPBELL was going to call OLEA and to wait two minutes before CAMPBELL called OLEA. CAMPBELL asked THOMAS what he (THOMAS) had told OLEA. THOMAS replied that he told him (OLEA) the "ticket" (price of drugs). CAMPBELL asked if everything would be "straight" (meaning that OLEA would be fair in his drug dealings with

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01637

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE    5 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

CAMPBELL). THOMAS said that he (OLEA) will call you (CAMPBELL) back and that
he (OLEA) does not have bullshit (bad drugs). THOMAS then asked CAMPBELL,
"Unless you want to try a nina (9 ounces) out and if it (the 9 ounces) is
right, you want to go half or whatever." CAMPBELL said we can do "half" (half
a kilogram) or we can try his (OLEA'S). CAMPBELL asked THOMAS if OLEA was
going to "try to do me," (rip-off CAMPBELL). THOMAS said that OLEA was not
that kind of person. CAMPBELL told THOMAS to tell OLEA a "heezie" (1/2 of
kilogram). THOMAS affirmed.

At approximately 8:31 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an incoming telephone call (#3370) from TT-3 used by THOMAS.
During the call, THOMAS stated that he gave OLEA'S phone number to CAMPBELL.
THOMAS told OLEA that CAMPBELL wanted to "chop that tree in half" (1/2 amount
of drugs). OLEA asked if tonight and THOMAS told OLEA that he (CAMPBELL) would
call in 2 minutes. OLEA acknowledged.

At approximately 8:33 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an incoming telephone call (#3371) from TT-4 used by CAMPBELL.
During the call, CAMPBELL greeted OLEA, "Hey, LIZ." CAMPBELL identified
himself as "Bink" and asked OLEA, "What is it today or tomorrow?" OLEA stated
that "Trick" (THOMAS) told him "OLEA" that he (CAMPBELL) needed a "half a
tree" (quantity of drugs). OLEA responded saying that he needed to talk to
"that dude" (drug source of supply) because he (drug source of supply) only
lets go of a "whole thing" (quantity of drugs) but that he (OLEA) would call
another "dude" (different drug source of supply). CAMPBELL acknowledged and
asked OLEA to call him back.

At approximately 8:34 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an outgoing telephone call (#3372) to telephone number (424)
477-9863 (TT-11) used by Fernando "Fern" GAMBOA (GAMBOA). During the call,
OLEA asked if GAMBOA had left yet. GAMBOA stated he was about to leave and
then asked OLEA what's cracking. OLEA asked GAMBOA if he (GAMBOA) could leave
OLEA "one" (quantity of drugs) before he (GAMBOA) left. GAMBOA asked what was
OLEA'S location and OLEA replied that he was near his mother's house (1623
Lagoon Avenue in Wilmington). GAMBOA stated that he needed to turn around.
GAMBOA then asked how long would OLEA be there. OLEA replied that he would
wait for GAMBOA. GAMBOA affirmed and said that he would swing by (OLEA'S
location). OLEA said that he would wait.

At approximately 8:36 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an outgoing telephone call (#3373) to TT-4 used by CAMPBELL.
During the call, OLEA asked if CAMPBELL could wait a little bit because OLEA
could do it tonight, he (OLEA) had "a dude" (GAMBOA) coming but it would take
a little time. CAMPBELL replied that they could do "it" (drugs transaction)
tomorrow. CAMPBELL stated he was not in that much of a rush. OLEA affirmed and

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01638

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    6 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

then stated that he would have "it" (drugs) tonight if CAMPBELL needed "it"
(drugs) tonight to let him (OLEA) know. OLEA then said that he was waiting on
this "dude" (GAMBOA) and that he would be waiting for probably an hour.
CAMPBELL told OLEA that they could do "it" (drug transaction) tomorrow in the
morning. OLEA affirmed and stated that he would contact CAMPBELL in the
morning.

At approximately 8:45 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an incoming telephone call (#3378) from TT-11 used by GAMBOA.
During the call, OLEA asked GAMBOA if he (GAMBOA) had arrived. GAMBOA affirmed
and stated that he needed to make a u-turn and there was no parking.  OLEA
stated that he was going to go outside.

At approximately 8:45 p.m., LAPD Detectives Harris, Riske, Mitchell and
Officers Derosier, Hernandez, Wight and Marzan assigned to the Harbor Division
Narcotics Enforcement Detail (NED) established surveillance at OLEA'S mother's
residence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ California. LAPD
Officer Wight saw that a lifted grey colored Chevy pick-up truck bearing
California license plate 7Y53352 drove down the 1600 block of Lagoon Avenue at
a slow rate of speed.  According to California Department of Motor vehicle
(DMV) records check, the Chevy was registered to Fernando G. HERRERA, ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, California (Fernando G. HERRERA is a known
alias for GAMBOA). Officer Wight saw OLEA in the middle of the street in front
of ▓▓▓▓▓▓▓▓▓and met with the driver of the Chevy. OLEA walked away from the
driver of the Chevy and walked inside ▓▓▓▓▓▓▓▓▓▓▓ LAPD surveillance
followed the Chevy to the area of Eudora Avenue and Sandison Street, at which
time the driver of the Chevy conducted counter surveillance techniques and
LAPD officers terminated surveillance.

At approximately 9:17 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an outgoing telephone call (#3382) to telephone number (310)
344-8019 used by Michael KIELBASA. During the call, OLEA told KIELBASA that he
(OLEA) would have "some" (drugs) tomorrow. KIELBASA replied that he (KIELBASA)
was waiting on OLEA (to deliver the drugs). OLEA affirmed and stated that he
wanted to do "it" (drug transaction) tomorrow during the day, because he was
going to be gone during the night. KIELBASA told OLEA to let him (KIELBASA)
know when he gets "it" (drugs) OLEA said that he (OLEA) already had "it"
(drugs) and "break it" (split the kilogram) until the morning. KIELBASA
questioned OLEA about not having "it" (drugs) earlier. OLEA stated that he
(OLEA) just barely got "it" (drugs) right now. KIELBASA affirmed and told OLEA
that he (KIELBASA) was completely "dry" (out of drugs). OLEA affirmed and said
that he (OLEA) would call KIELBASA tomorrow around noon.

On the following day, February 13, 2009 at approximately 9:21 a.m., contract

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01639

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE      7 |
| :--- | :--- |
| | CASE NUMBER LA13CR08LA0007 |
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | REPORT NUMBER: 071 |

linguists monitoring TT-6 used by OLEA intercepted an outgoing telephone call (#3410) to TT-4 used by CAMPBELL. During the call, OLEA and CAMPBELL greeted. OLEA asked CAMPBELL, if he (CAMPBELL) was going to "play" (conduct drug transactions). OLEA stated that he (OLEA) needed to "break that down" (split the kilogram). OLEA said that he (OLEA) had to go break that down (split the kilogram) and he (OLEA) would call CAMPBELL. CAMPBELL asked OLEA what time and where they would meet. OLEA responded one hour. OLEA and CAMPBELL both stated they were in the city of Lakewood. OLEA said that he (OLEA) had to head that way referring to the Wilmington area. CAMPBELL acknowledged.   OLEA then said that he (OLEA) was going to head down there (Wilmington) and get "that" (drugs) ready for CAMPBELL and then OLEA would call him (CAMPBELL) so they (OLEA and CAMPBELL) could check "that" (drugs) out. CAMPBELL agreed.

At approximately 9:40 a.m., LAPD Detectives Harris, Riske and Officers Derosier, Mitchell, Hernandez, Marzan, and Wight and ICE S/A Donovan initiated surveillance at CAMPBELL'S residence located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓California. LAPD Officer DeRosier saw that CAMPBELL exited the residence and entered a 2000 silver colored Mercedes S500 bearing California license plate 6FQA851. According to California Department of Motor vehicle (DMV) record checks, the Mercedes was registered to Robert Lee CAMPBELL JR. at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ California. CAMPBELL departed the area in the Mercedes southbound on Los Coyotes Diagonal. Surveillance followed CAMPBELL to Jiffy Lube located at 525 East Pacific Coast Highway in Long Beach. CAMPBELL parked the Mercedes and met with an unidentified Jiffy Lube employee whom he spoke to for a brief time.

At approximately 10:04 a.m., contract linguists monitoring TT-6 used by OLEA intercepted an outgoing telephone call (#3411) to TT-4 used by CAMPBELL. During the call, OLEA and CAMPBELL discussed an area to meet. CAMPBELL asked OLEA if he wanted to meet in the "Ghost" (Ghost Town) and OLEA negated. CAMPBELL interrupted the conversation with OLEA and spoke to an unidentified male in the background regarding CAMPBELL'S vehicle. CAMPBELL and OLEA continued to discuss a meet location. OLEA suggested that they (OLEA and CAMPBELL) meet at the CVS Pharmacy located on Pacific Coast Highway. CAMPBELL agreed and OLEA told CAMPBELL to go in there (into the parking lot) and that he (OLEA) would be in a little CTS Cadillac. CAMPBELL asked if OLEA was going there (CVS) now. OLEA affirmed and advised that he was close by. CAMPBELL said that he would be there (CVS) right now.

At approximately 10:15 a.m., LAPD Officers and ICE S/A Donovan followed CAMPBELL to the CVS Pharmacy parking lot located at the corner Pacific Coast Highway and Fries Avenue in Wilmington.  LAPD Officer Marzan and Detective Riske saw that CAMPBELL drove the Mercedes into the CVS parking lot and parked next to a silver colored Cadillac bearing California license plate 6AEH357. According to California DMV records check, the Cadillac was registered to

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01640

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE    8 |
|---|---|
| | CASE NUMBER LA13CR08LA0007 |
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | REPORT NUMBER: 071 |

Miriam OLEA at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Detective Riske
identified OLEA as the driver of the Cadillac as OLEA exited the driver's seat
of the Cadillac and entered the front passenger seat of the Mercedes.

At approximately 10:18 a.m., LAPD Officer Marzan and Detective Riske saw that
OLEA exited the passenger seat of CAMPBELL'S Mercedes and reentered the
driver's seat of the Cadillac.  OLEA departed the area in the Cadillac and
LAPD Detective Harris and Officer Wight followed OLEA to 1623 Lagoon Avenue in
Wilmington. LAPD Detective Riske, LAPD Officers Derosier, Mitchell, Hernandez,
Marzan, and ICE S/A Donovan followed CAMPBELL as he departed the area in the
Mercedes.

At approximately 10:25 a.m., CAMPBELL drove to CAMPBELL'S mother's residence
located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ CAMPBELL parked the Mercedes
in the driveway of the residence, exited the Mercedes and entered the
residence.

At approximately 10:26 a.m., contract linguists monitoring TT-4 used by
CAMPBELL intercepted an outgoing telephone call (#7664) to telephone number
(424) 222-0542 used by Rick Darnell SMITH AKA "Slick Rick" (R. SMITH) born
December 21, 1964. During the call, CAMPBELL asked if R. SMITH was "ready". R.
SMITH affirmed.

At approximately 10:28 a.m., CAMPBELL Mauretania residence and entered the
driver's seat of the Mercedes and left the location.

At approximately 10:35 a.m., CAMPBELL drove to an auto repair shop located at
Pacific Coast Highway and Lagoon Avenue in Wilmington. CAMPBELL talked to an
employee of the auto repair shop for a brief time and then departed the area.
Surveillance continued to follow CAMPBELL as he drove northbound on Pacific
Coast Highway towards the Harbor City area.

At approximately 10:40 a.m., surveillance temporarily lost sight of CAMPBELL
in the area of 253rd Street and Vermont Avenue in Harbor City. Approximately 2
minutes later, LAPD Officer DeRosier reacquired surveillance of the Mercedes
northbound on Vermont Avenue.  CAMPBELL was in the driver's seat and R. SMITH
was seated next to CAMPBELL in the passenger seat.  According to surveillances
and public record checks R. SMITH resided at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓California which is the area where LAPD temporarily lost surveillance.

At approximately 10:45 a.m., CAMPBELL drove into the parking area of the
Irvine's Auto Repair shop located at 24906 Normandie Avenue in Torrance. LAPD
Officer DeRosier saw that CAMPBELL parked the Mercedes and both CAMPBELL and
SMITH exited the Mercedes and entered the auto repair shop.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    9 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N  C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

At approximately 10:50 a.m., CAMPBELL and SMITH exited the auto repair shop, entered the Mercedes and departed the area northbound on Normandie Avenue to eastbound onto Sepulveda Boulevard.

At approximately 10:55 a.m., CAMPBELL pulled into the parking lot of the Home Depot located at 110 East Sepulveda Boulevard in Carson.  CAMPBELL parked the Mercedes and both CAMPBELL and R. SMITH exited the Mercedes and entered the Home Depot.

At approximately 11:10 a.m., LAPD Officer DeRosier saw that both CAMPBELL and SMITH exited Home Depot, entered the Mercedes and left the location. During the surveillance, LAPD lost visual of the Mercedes in the area of Pacific Coast Highway and Avalon Boulevard.

At approximately 11:15 a.m., Officer Wight reacquired surveillance of the Mercedes in the driveway of 1506 East Cruces Avenue in Wilmington. R. SMITH was sitting in the passenger seat of the Mercedes waiting for CAMPBELL.  This residence is located in the area known as "Ghost Town" and a property known to be associated with CAMPBELL.

At approximately 11:25 a.m., Officer Wight saw CAMPBELL exit 1506 East Cruces Avenue.  CAMPBELL returned to the Mercedes and both CAMPBELL and R.SMITH departed the area.

At approximately 11:30 a.m., CAMPBELL drove to his mother's residence located at 1022 Mauretania Avenue.  Together CAMPBELL and R. SMITH exited the Mercedes and entered the residence.

At approximately 11:40 a.m., CAMPBELL exited the residence. At which time, LAPD Officer Marzan saw a heavy dark colored package protruding from the right front pocket of CAMPBELL'S sweatshirt. CAMPBELL entered the driver's side of the Mercedes and departed the area. Surveillance followed CAMPBELL as he traveled southbound onto Pacific Coast Highway back towards Long Beach.

At approximately 11:45 a.m., LAPD uniformed patrol officers Sellner and Shry driving a marked black and white police vehicle conducted a traffic stop on the Mercedes at Pacific Coast Highway and Technology Place. Officer Sellner ordered CAMPBELL out of the Mercedes. CAMPBELL was acting in a disorderly manner, failing to comply with the officers' commands. Officer Sellner detained CAMPBELL while Officer Shry conducted a search of the Mercedes. Officer Shry immediately smelled a strong chemical odor which he associated with powder cocaine. He saw a dark red plastic bag on the backseat, in plain view.  Officer Shry recovered the dark red plastic bag on the backseat which matched the description of the object that Officer Marzan saw protruding from CAMPBELL'S sweatshirt.  LAPD Officer Shry opened the bag and observed a clear

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01642

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   10 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER  LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

plastic bag containing a white powdery substance resembling cocaine.  The
substance was later weighed and determined to be approximately 515.32 gross
grams of cocaine.

LAPD Officers Shry and Sellner booked the cocaine into evidence under LAPD DR#
09-05-00677.  The evidence was sent to the DEA lab and tested for the presence
of illegal drugs. The test yielded positive for the presence of cocaine HCL.

Additionally, Officers Sellner and Shry recovered $1237.17 U.S. Currency from
CAMPBELL.

Officers Sellner and Shry arrested and booked CAMPBELL for the violation of
California Health and Safety (HS) Code, 11352  the Transportation of Cocaine.


At approximately 1:06 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an incoming telephone call (#3430) from telephone number (310)
344-8019 used by Michael KIELBASA. During the call, OLEA stated that he (OLEA)
was waiting for a haircut.  KIELBASA asked OLEA if he was going to contact him
(KIELBASA) when he was "ready" (to complete the drugs transaction). KIELBASA
stated that he (KIELBASA) did not want OLEA forgetting about him (KIELBASA).
OLEA asked if KIELBASA would be around in an hour. KIELBASA affirmed. OLEA
acknowledged and said that he (OLEA) would call before he (OLEA) would head
over there.

At approximately 1:57 p.m., contract linguists monitoring TT-6 used by OLEA
intercepted an outgoing telephone call (#3456) to telephone number (310)
344-8019 used by KIELBASA. During the call, OLEA asked KIELBASA if he was at
his "pad" (residence). KIELBASA affirmed and OLEA said he was on his way to
KIELBASA'S house.

On February 14, 2009, at approximately 1:36 p.m., contract linguists
monitoring TT-3 used by CAMPBELL intercepted an incoming telephone call
(#7770) from telephone number (562) 276-8119 used by Ricky SANDERS, AKA
"Dupont" (R. SANDERS) born November 6, 1959. During the call, CAMPBELL said he
(CAMPBELL) got followed yesterday (February 13, 2009), that he (CAMPBELL) had
bad luck on Friday the thirteenth. They (LAPD) pulled him (CAMPBELL) over and
found "something" (cocaine) in his (CAMPBELL'S) car. R. SANDERS asked what
they (LAPD) found. CAMPBELL said "they said they found some shit" (LAPD found
cocaine). R. SANDERS asked if he (CAMPBELL) told them (LAPD) they couldn't
search the vehicle (Navigator). CAMPBELL said yeah, they (LAPD) pulled him
(CAMPBELL) over for speeding which was a lie because he (CAMPBELL) wasn't
speeding. CAMPBELL said he (CAMPBELL) got pulled over for speeding in Long
Beach, he said he wasn't speeding. CAMPBELL said they (LAPD) asked if they
could search the car, CAMPBELL said no but they searched his car and found

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE   11 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 071 |

"something" (cocaine). R. SANDERS said that was "beatable" (CAMPBELL could prevail in court based on the search), that they (LAPD) couldn't search the car because he (CAMPBELL) didn't give them (LAPD) permission. CAMPBELL said they (LAPD) said they found "a lot" (of cocaine), and he (CAMPBELL) didn't get a ticket or anything and that the guy (LAPD officer) went in the trunk, in the car. CAMPBELL said he (CAMPBELL) paid a lawyer and bailed out. CAMPBELL said he was going to pay "Peter" (a lawyer), but they (LAPD) said they (LAPD) found a "nice little jewel" (large amount of cocaine) and claimed he (CAMPBELL) didn't know what they were talking about. R. SANDERS said that "Pete" (lawyer) will tell him, because he told him (R. SANDERS), whenever they (police) pulled you over, do not give them permission to "go up in your shit" (search your vehicle). CAMPBELL told R. SANDERS how he got pulled over again, and that the police asked if he (CAMPBELL) had any guns or anything in his (CAMPBELL'S) vehicle, and he (CAMPBELL) said no. CAMPBELL said that the police did not have a search warrant. CAMPBELL said that the officer went in the vehicle and came out with a big bag and told him (CAMPBELL) that (the bag) was his (CAMPBELL'S). R. SANDERS said hell no, that was "beatable" (defensible in court), they (LAPD) were supposed to give him a "traffic stop" (traffic ticket), that he (CAMPBELL) was not on probation or parole and that they (LAPD) had no reason to search his (CAMPBELL'S) car. CAMPBELL said they (LAPD) didn't give him a ticket (for speeding) though. R. SANDERS said to talk to "Pete" (lawyer) and that he (lawyer) told him (R. SANDERS) in case he (R. SANDERS) got pulled over, so go to talk to "Peter Larking" (lawyer) about it (CAMPBELL's arrest) and not to worry about it. R. SANDERS said they (LAPD) were supposed to give him (CAMPBELL) a traffic ticket, that he (Pete) was going to beat that for "technicalities" (based on the traffic stop and search), and will charge CAMPBELL but it will be worth it and that he (Pete, lawyer) might charge him (CAMPBELL) "5 or 7" (likely $5000 to $7000). CAMPBELL said they (LAPD) got "a nice little bag" (of cocaine) and they (LAPD) said it (the cocaine) was his (CAMPBELL'S). R. SANDERS said, "I don't give a fuck what they got, they pulled you over for a traffic stop, they not narcotics" (CAMPBELL deserved a traffic ticket and the LAPD officers were not narcotics investigators). CAMPBELL concurred. R. SANDERS said to go to talk to "Pete" (lawyer), go to the preliminary hearing, ask for 30 days to get legal representation, plead not guilty, and once he got to that, then go see "Pete" (lawyer). R. SANDERS said "Pete" (lawyer) would get the police report and was going to make it happen (get CAMPBELL acquitted). CAMPBELL said it was a traffic stop, but they (LAPD) didn't give him a ticket. R. SANDERS said not to worry about that. CAMPBELL said he needed his vehicle and that he (CAMPBELL) was going to call "Pete" (lawyer). R. SANDERS said yeah to go see Pete. They agreed to talk later.

This investigation continues.


O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.



**U.S. Department of Justice**

**Drug Enforcement Administration**

## LABORATORY REPORT

**TO:**   Bureau of Alcohol, Tobacco, Firearms and    **CASE NUMBER:** 784075-07-0040
Explosives
Long Beach, CA
**FROM:** Southwest Laboratory
Vista, CA

**RESULTS AND CONCLUSIONS:**

| Exh. No. | Lab. No. | Active Drug Ingredient (Established or Common Name) | Gross Weight | Net Weight | Conc. Or Purity | Amount of Actual Drug | Reserve Weight |
|----------|----------|-----------------------------------------------------|--------------|------------|-----------------|-----------------------|----------------|
| 32 | 218348 | Cocaine base | 97.8 g | 70.5 g | 67.7% | 47.7 g | 69.2 g |
| 33 | 218349 | Cocaine base | 100.5 g | 71.4 g | 66.2% | 47.2 g | 69.7 g |
| 34 | 218350 | Cocaine HCl | 678.7 g | 500.0 g | ---- | ---- | 499.6 g |

**Remarks:**
Ex. 32 and 33:  Also contain Hydroxyzine and Sodium Bicarbonate
Ex. 34:  Also contains Phenyltetrahydroimidazothiazole and Aminopyrine

**Analyzed By:** Michael Brousseau, Senior Forensic Chemist        **Date:**   07/02/2009
                                (Signature, Printed Name, Title)

**Approved By:** Scott R. Oulton, Laboratory Director        **Date:** 7/3/09
                                (Signature, Printed Name, Title)

Form LS-05-010 (Feb 2009) v.5                                Page 1 of 1

OA01654

# EXHIBIT D

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N | TECS ACCESS CODE 3 |
|---|---|
| | PAGE    1 |
| | CASE NUMBER LA13CR08LA0007 |

TITLE: BRAYAN PEREZ ET AL

CASE STATUS:     INTERIM RPT

| REPORT DATE<br>011110 | DATE ASSIGNED<br>120407 | PROGRAM CODE<br>301 | REPORT NO.<br>070 |
|---|---|---|---|

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: SEIZURE OF 81.3 G OF CRACK COCAINE FROM MIXON ON FEBRUARY 12, 2009

SYNOPSIS:
The United States Immigration and Customs Enforcement (ICE), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint narcotics/ street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in and around the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

This Report of Investigation (ROI) documents the seizure of approximately 81.3 grams of crack cocaine from Lance MIXON on February 12, 2009.

| DISTRIBUTION:<br>SACLA | SIGNATURE:<br>DENNEWITZ     JIEL     N   SPECIAL AGENT |
|---|---|
| | APPROVED:<br>CHEVALIER     PATRICK    S   OI GRP SUPERVISOR |
| | ORIGIN OFFICE: LA<br>LOS ANGELES, CA - SA |
| | TELEPHONE: 562 624 3900 |
| | TYPIST: DENNEWITZ |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

EXHIBIT D

OA01605

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N   C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 070 |

CASE PROGRAM CODES:

301 CONTROLLED SUBSTANCE  B7U TECHNICAL SURVEILLAN  YS0 GANGS
YL0 DRUG SMUGGLING

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01606

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    3 |
|---|---|
| | CASE NUMBER LA13CR08LA0007 |
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | REPORT NUMBER: 070 |

DETAILS OF INVESTIGATION:

The United States Immigration and Customs Enforcement (ICE), Office of the Special Agent in Charge, Los Angeles (SAC/LA) is conducting a joint narcotics/ street gang investigation with the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Long Beach Field Office (LBFO) and the Los Angeles Police Department (LAPD), Harbor Division.  The investigation is targeting street gang members based in and around the Long Beach and Wilmington, California areas and their Mexican drug sources of supply.

On February 11, 2009 at approximately 6:42 p.m., contract linguists monitoring Target Telephone (562) 313-3980 (TT-4) used by Robert Lee CAMPBELL born ▓▓▓▓▓▓▓▓▓▓▓▓▓. intercepted an outgoing telephone call (#7421) to telephone number (562) 209-5275 used by Raymond NEWBORN born ▓▓▓▓▓▓▓▓▓▓▓▓▓. During the call, CAMPBELL told NEWBORN that he (CAMPBELL) needed to "cut" tomorrow and added that NEWBORN should tell him (third party) that CAMPBELL will be ready for both. NEWBORN acknowledged and asked for a call from CAMPBELL. CAMPBELL agreed.

On February 12, 2009 at 10:30 a.m., LAPD Detective's Harris, Mitchell, Riske, and Officer's DeRosier, Hernandez, Marzan, and Wight established surveillance at CAMPBELL'S residence located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓.

At approximately 10:58 a.m., contract linguists monitoring TT-4 used by CAMPBELL intercepted an incoming telephone call (#7464) from telephone number (310) 693-1495 used by Terrance Ramon HORSLEY AKA "Moochie," (T. HORSLEY) born ▓▓▓▓▓▓▓▓▓▓▓▓▓. During the call, CAMPBELL told T. HORSLEY that he would "be ready for him today" (have drugs for him) T. HORSLEY replied that he was with "T-Roo" and "Ryan". CAMPBELL stated that he would call him (T. HORSLEY) back.

At approximately 10:59 a.m., contract linguists monitoring TT-4 used by CAMPBELL intercepted an outgoing telephone call (#7466) to telephone number (310) 693-1495 used by "BOO," believed to be Lance MIXON born ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓based on surveillance and 18 intercepted telephone calls to/ from TT-4 between February 11, 2009 to February 12, 2009. During this call, BOO said "those three" (quantity of drugs). CAMPBELL stated that he (CAMPBELL) was heading over to Wilmington and he (CAMPBELL) would call when he (CAMPBELL) got over to that way.

At approximately 11:37 a.m., contract linguists monitoring TT-4 used by CAMPBELL intercepted an outgoing telephone call (#7472) to telephone number (562) 209-5275 used by NEWBORN. During the call, CAMPBELL asked NEWBORN to get him "like 4-5 dollars worth of cornbread" (amount of drugs) and NEWBORN

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01607

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 070 |

affirmed.

At approximately 11:40 a.m., surveillance saw that CAMPBELL exited his residence and entered a 1999 black Lincoln Navigator, bearing California license plate 4EYR636. According to California Department of motor Vehicles (DMV) records check, the Navigator was registered to Robert Lee CAMPBELL, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ California.

CAMPBELL drove to a market, located at 21423 Norwalk Boulevard in Hawaiian Gardens, California. CAMPBELL parked and exited the Navigator. CAMPBELL then entered the market. Shortly afterwards, CAMPBELL exited the market carrying unknown items, returned to the Navigator and departed the area.

At approximately 12:00 p.m., CAMPBELL arrived back at his residence, parked the Navigator and entered the residence.

At approximately 12:12 p.m., a green GMC pick-up truck, bearing California license plate 7Z18449, arrived at CAMPBELL'S residence. LAPD Officer DeRosier observed a Black male, later identified as Ray NEWBORN exited the GMC and entered the residence. According to California DMV records check, the GMC was registered to Ray Glen NEWBORN; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ California.

At approximately 12:55 p.m., NEWBORN exited the residence, entered the green GMC pick-up and departed the area.

At approximately 1:04 p.m., contract linguists monitoring TT-4 used by CAMPBELL intercepted an outgoing telephone call (#7482) to telephone number (310)693-1495 used by MIXON. During the call, CAMPBELL asked if he (MIXON) wanted to meet him (CAMPBELL) over there (unknown location). MIXON asked if "at the house" and CAMPBELL affirmed. MIXON replied that he (MIXON) was going to leave in 10 minutes and that he (MIXON) was leaving from Compton. CAMPBELL affirmed. Based on public record checks and surveillance, MIXON resided at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ California.

At approximately 1:20 p.m., CAMPBELL exited his residence carrying packages. CAMPBELL placed the packages in the passenger rear seat area of the Navigator and entered the driver's side. CAMPBELL departed the area in the Navigator south bound on Los Coyotes Diagonal. CAMPBELL drove to Ralph's grocery store located at 3380 North Los Coyotes Diagonal in Long Beach, California. CAMPBELL parked the Navigator, exited and entered the Ralph's grocery store.

At approximately 1:27 p.m., contract linguists monitoring TT-4 used by CAMPBELL intercepted an incoming telephone call (#7485) from telephone number (310)693-1495 used by MIXON. During the call, MIXON stated that he (MIXON) was

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01608

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    5 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | CASE NUMBER LA13CR08LA0007 |
| | REPORT NUMBER: 070 |

on his way and CAMPBELL said that he (CAMPBELL) would meet him (MIXON) there.

At approximately 1:35 p.m., CAMPBELL exited the Ralph's and reentered the
Navigator. CAMPBELL then drove southbound on Los Coyotes Diagonal.

At approximately 1:40 p.m., contract linguists monitoring TT-4 used by
CAMPBELL intercepted an outgoing telephone call (#7488) to telephone number
(310) 693-1495 used by T. HORSLEY. During the call, CAMPBELL asked where T.
HORSLEY was and T.HORSLEY stated at the house. CAMPBELL asked if he
(T.HORSLEY) got a ride. T. HORSLEY said not that far and asked where was he
(CAMPBELL) was trying to go. CAMPBELL asked where "Ryan" was at. T. HORSLEY
said right here. CAMPBELL said he (CAMPBELL) thought he (Ryan) was going to
Cruces (Cruces Street is located in "Ghost Town," an area with in Wilmington,
California). T. HORSLEY stated that "T-Roo" did not want to drive over there.
CAMPBELL affirmed and stated that he (CAMPBELL) was still driving there
(Cruces Street).

At approximately 1:50 p.m., LAPD Officer's observed CAMPBELL arrive at 1506 E.
Cruces Street in Wilmington. CAMPBELL parked the Navigator in the driveway of
the residence and met with a male Black, later identified as MIXON and several
other male Blacks that exited from the residence. CAMPBELL and MIXON walked
over to CAMPBELL'S Navigator for a brief minute. MIXON broke contact with
CAMPBELL, entered a black Suburban, bearing California license plate 3WBS612,
and left the area. According to California DMV records check, the Suburban was
registered to Rose DAVIS, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Through
the use of a DMV records check, S/A Dennewitz learned that MIXON used the
Compton address set forth above on his California driver's license.

At approximately 2:00 p.m., LAPD Harbor Division Officer Gonzalez and Officer
Shaw, driving a marked black and white police vehicle conducted a traffic stop
on the Suburban at the corner of Sepulveda and Alameda in Wilmington.  During
the stop, LAPD Officers conducted a search of the Suburban and recovered an
open "Jiffy" Corn muffin mix box. LAPD Officers looked in the box and
recovered 81.3 grams of off white solids resembling crack cocaine. MIXON was
the only person in the Suburban.

LAPD Officers arrested MIXON for violation of California Health and Safety
(HS) code 11351.5  possession of controlled substance and seized and booked
the off white solids resembling crack cocaine into evidence under LAPD DR#
09-05-00682.

At approximately 2:35 p.m., CAMPBELL exited the 1506 E. Cruces residence and
departed the area in the Navigator.  ICE S/A Donovan followed CAMPBELL to the
2400 block of Cedar Avenue in Long Beach where CAMPBELL parked in the middle
of the street.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE    6 |
|---|---|
| | CASE NUMBER  LA13CR08LA0007 |
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | REPORT NUMBER: 070 |

At approximately 2:47 p.m., contract linguists monitoring TT-4 used by
CAMPBELL intercepted an outgoing telephone call (#7521) to telephone number
(310) 693-1495 used by T. HORSLEY. During the call, CAMPBELL told T. HORSLEY
to come outside quick and T. HORSLEY affirmed.

Surveillance saw that a male Black, identified through the use of California
DMV records as T. HORSLEY walked towards CAMPBELL'S Navigator.  T. HORSLEY
approached the driver's side window of the Navigator and met with CAMPBELL for
a brief time.

At approximately 2:55 p.m., T. HORSLEY walked away and CAMPBELL departed the
area in the Navigator.  At that time, ICE and LAPD terminated surveillance.

The investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OA01610



**U.S. Department of Justice**

**Drug Enforcement Administration**

## LABORATORY REPORT

TO:   Bureau of Alcohol, Tobacco, Firearms and
      Explosives                                    **CASE NUMBER:** 784075-07-0040
      Long Beach, CA
FROM: Southwest Laboratory
      Vista, CA

### RESULTS AND CONCLUSIONS:

| Exh. No. | Lab. No. | Active Drug Ingredient (Established or Common Name) | Gross Weight | Net Weight | Conc. Or Purity | Amount of Actual Drug | Reserve Weight |
|---|---|---|---|---|---|---|---|
| 38 | 218354 | Cocaine base | 106.1 g | 74.3 g | — | — | 73.3 g |
| 39 | 218355 | Cocaine base | 56.0 g | 5.4 g | — | — | 5.2 g |
| 40 | 218356 | Methamphetamine HCl | 26.6 g | 0.46 g | 15.8% (± 1.0 %*) | 0.072 g | 0.28 g |

**Remarks:** * This value represents the quantitative uncertainty measurement estimate for the DEA laboratory system.
Ex. 38 and 39:  Also contain Phenyltetrahydroimidazothiazole and Sodium Bicarbonate

Analyzed By: Michael Brousseau, Senior Forensic Chemist          **Date:**   05/26/2009
                  (Signature, Printed Name, Title)

Approved By: Scott R. Oulton, Laboratory Director               **Date:**  6-1-09
                  (Signature, Printed Name, Title)

Form LS-05-010 (Feb 2009) v.5                                   Page 1 of 1

OA01627